IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | |
|---|---|
| ARCIDUS BAUMS, | ) |
| | ) |
|     Plaintiff, | ) |
| | ) CIVIL ACTION NUMBER: |
| v. | )        3:06-cv-00558-MEF |
| | ) |
| GENERAL INSURANCE COMPANY OF | ) |
| AMERICA; CITY OF TUSKEGEE; | ) |
| et al. | ) |
| | ) |
|     Defendants. | ) |

**PLAINTIFF'S MOTION TO REMAND**

Plaintiff Arcidus Baums hereby moves to remand this case to the Circuit Court of Macon County, Alabama, and as grounds therefore, states as follows:

**Introduction**

After a fire severely damaged Plaintiff's home in 2003, his insurer, General Insurance Company of America ("General Insurance"), refused to pay him the monies due and owing under his policy of insurance. Without the funds due and owing under the insurance policy issued by General Insurance, Plaintiff lacks sufficient funds to repair his home, and therefore his home remains in a damaged and deteriorated condition. The City of Tuskegee recently informed Plaintiff that due to the condition of his home, it intends to either demolish his home or repair it and impose a lien on his property for the cost of the repairs.

In response to these events, Plaintiff filed the instant lawsuit in the Circuit Court of Macon County, Alabama, alleging claims of breach of contract and bad faith against General Insurance, and seeking an injunction against the City of Tuskegee to prevent it from demolishing his home during the pendency of this litigation.

General Insurance has improperly removed the case, asserting that Mr. Baums has no possibility of obtaining a preliminary injunction preventing the City of Tuskegee from demolishing his home during the pendency of his claims against General Insurance. General Insurance contends that Alabama law does not provide for injunctive relief against the City of Tuskegee in such a circumstance, implicitly leaving Plaintiff with no remedy other than to sit idly by and watch his home be completely demolished or repaired by the City.[1] In the alternative, General Insurance contends that Plaintiff has misjoined his claims against General Insurance and the City of Tuskegee in such an egregious manner as to constitute fraudulent joinder. Because neither contention is correct, this case is due to be remanded to State Court.

## **Federal Jurisdiction is Limited**

Federal courts are by definition courts of limited jurisdiction. *See, e.g., Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). As such, they may only hear cases that they have been authorized to hear by the Constitution or the Congress of the United States. *See Id.* Consequently, remand of removed cases is favored where federal jurisdiction is not absolutely clear. *See, e.g., Burns*, 31 F.3d at 1095; *Rayfield v. Nat'l Auction Group, Inc.*, 878 F.Supp. 203, 206 (M.D.Ala.1995) ("Because the removal statutes are strictly construed against removal, generally speaking, all doubts about removal must be resolved in favor of remand.").

Removal of a case from state to federal court is proper only if the case could have been brought originally in federal court. *See* 28 U.S.C. § 1441(a); *Tapscott*, 77 F.3d at 1356 ("Any

---

[1] The contention that Plaintiff is left without a remedy to prevent the destruction of his home is contrary to the basic equitable principal that equity will not suffer a wrong without a remedy. "If a wrong has been committed, the court of equity, in order to provide justice under the facts and circumstances, has the power to frame a decree that will provide the aggrieved party a remedy, subject to the general principles of equity."
Davis, *Tilley's Alabama Equity* (4th Ed.), § 1-4(l).

2

civil case filed in state court may be removed by the defendant to federal court if the case could have been brought originally in federal court.") (citations omitted).

Under 28 U.S.C. § 1332 federal jurisdiction exists where there is complete diversity, i.e., no plaintiff is a resident of the same state as any defendant, and the amount in controversy exceeds $75,000.00.

In this case, complete diversity does not exist on the face of the Complaint, as both Mr. Baums and the City of Tuskegee are Alabama residents. [Complaint]. General Insurance does not dispute this fact, but instead contends that diversity jurisdiction nonetheless exists because the City of Tuskegee has been fraudulently joined and therefore its citizenship is due to be disregarded for purposes of determining whether this Court has subject matter jurisdiction. [Notice of Removal].

General Insurance asserts two bases for its claim that the City of Tuskegee has been fraudulently joined: (1) there is no reasonable basis for predicting that a state court might impose liability on the City of Tuskegee because Plaintiff's complaint fails to state a valid claim for injunction against City of Tuskegee and because Plaintiff failed to exhaust his administrative remedies prior to filing suit against the City of Tuskegee [Notice of Removal, ¶s 5 and 6]; and (2) because Plaintiff's claims against General Insurance and the City of Tuskegee have been fraudulently mis-joined. [Notice of Removal, ¶ 7].

### Factual and Procedural Background of Case

Plaintiff Arcidus Baums owns a home located in the City of Tuskegee. [Complaint, ¶ 7]. On September 17, 2003, a fire severely damaged Mr. Baums' home. [*Id.* at ¶ 9]. At the time of the fire, General Insurance provided residential fire coverage on Mr. Baums' home. [*Id.* at ¶ 8]. Following the fire, Mr. Baums learned that General Insurance had adjusted the loss at

approximately $17,000.00. [*Id.* at ¶ 12]. After contacting General Insurance to inform them that the damage from the fire far exceeded $17,000.00, an agent of General Insurance directed Mr. Baums to obtain two repair estimates. [*Id.* at ¶s 13 and 14]. Mr. Baums in fact obtained three repair estimates which placed the cost to repair the damage at between $42,200.00 and $61,200.00. [*Id.* at ¶ 15]. Mr. Baums then forwarded the estimates to General Insurance, yet General Insurance refused to adjust its loss assessment. [*Id.* at ¶ 16].

The $17,000.00 that was paid by General Insurance is woefully inadequate for Mr. Baums to repair his home and he lacks sufficient funds to pay the difference between the amount paid by General Insurance and the cost to actually repair his home. [Complaint ¶s 17, 19 and 36]. Although Mr. Baums desires to repair his home, without the insurance proceeds to which he is entitled, he cannot afford to do so. [*Id.*]. Because General Insurance has failed and refused to pay the amount due and owing under Plaintiff's policy, Mr. Baums is left with insufficient funds to repair his home, which is uninhabitable due to the extensive damage caused by the fire. [*Id.*].

On March 1, 2006, Mr. Baums received a letter from the City of Tuskegee stating that it had inspected his home and it was found to be "unsafe for habitation or use". [Complaint, Exhibit 1]. The letter provided Mr. Baums 10 days to file a remediation plan with the City and an additional 60 to 90 days to either repair or demolish the home. [*Id.*]. The letter goes on to warn that:

> Failure to comply with these instructions within the stated period *will* result in further action by the City of Tuskegee. The property will be restored, demolished or removed at the direction of the City. Any and all costs (including administrative fees) associated with the remediation will be assessed to you and will constitute a lien against the property.

[*Id.*] (emphasis in original). Because Mr. Baums does not dispute the City's determination that his house is "unsafe for habitation or use" in its current condition, he did not pursue an appeal of the City's determination.

Faced with the imminent destruction of his home and an insurance company which refused to fulfill its contractual obligations, Mr. Baums instituted this suit in the Circuit Court of Macon County on May 22, 2006. In his Complaint, Mr. Baums asserts claims for breach of contract and bad faith against General Insurance, and seeks to enjoin the City of Tuskegee from demolishing his home until he can obtain the monies owed him by General Insurance and repair his home. [Complaint].

### **Fraudulent Joinder Standard**

The Eleventh Circuit applies a threefold test for determining whether a defendant has been fraudulently joined: the removing party must show either (1) that there is no possibility the plaintiff could establish a cause of action against the resident defendant in state court, (2) that the plaintiff fraudulently pleaded jurisdictional facts, or (3) that a diverse defendant is joined with a non-diverse defendant as to whom there is no joint, several or alternative liability and the claim has no real connection to the claim against the nondiverse defendant. *See Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir.1998). The burden of proving fraudulent joinder rests with the removing defendant. *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir.1997) (citation omitted). This burden on the defendant is a heavy one, as it requires the court to evaluate the parties' factual allegations in the light most favorable to the plaintiff and resolve all uncertainties about state substantive law in favor of the plaintiff. *See Id.*

5

**I.      The City of Tuskegee has not been fraudulently joined and therefore this matter is due to be remanded.**

In its Notice of Removal, General Insurance incorrectly asserts that the City of Tuskegee has been fraudulently joined to this action under both the first and third test of fraudulent joinder set forth in *Triggs*.

**A.      General Insurance cannot carry its burden to prove that there is no possibility that Baums can obtain an injunction against the City of Tuskegee in this case.**

In paragraphs 5 and 6 of its Notice of Removal, General Insurance argues that Baums' complaint is insufficient to present a possibility that he could obtain injunctive relief against the City of Tuskegee and therefore, the City has been fraudulently joined to this action. Under this first test of fraudulent joinder, federal jurisdiction cannot be sustained where "there is even a possibility that a state court would find that the complaint states a cause of action against ⋯ the resident defendant [ ]." *Triggs*, 154 F.3d at 1287 (internal quotations omitted). In fact, "[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id.* (emphasis in original). If there is a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court. *See Coker v. Amoco Oil Co.*, 709 F.2d 1433, 1440 (11th Cir.1983). In other words, a motion to remand should be denied only if the court is convinced that there is "no possibility that the plaintiff can establish any cause of action against the resident defendant." *See Cabalceta v. Standard Fruit Co.*, 883 F.2d 1553, 1561 (11th Cir.1989).

### 1. Mr. Baums' Complaint states a claim against the City of Tuskegee for a preliminary injunction.

Plaintiff Baums' Complaint states a valid claim for injunctive relief under Alabama law and therefore, the City of Tuskegee has not been fraudulently joined. As an initial matter, a petition for injunctive relief is directed to the sound discretion of the trial court under the facts and circumstances of the particular case. *City Council of the City of Prichard v. Cooper*, 358 So.2d 440, 442 (Ala.1978). In order to be entitled to a preliminary injunction under Alabama law: (1) the trial court must determine whether a party has presented a fair question as to the existence of a right to be protected; (2) the injunction must be necessary to prevent an irreparable injury, and (3) the injury threatened must be both imminent and irreparable in the court of law. *Double C. Promotions, Inc. v. Exposition Enterprises, Inc.,* 404 So.2d 52, 54 (Ala. 1981).

In this case, Plaintiff's Complaint satisfies these elements and therefore presents a valid claim seeking a preliminary injunction under Alabama law. First of all, Alabama law recognizes that injunctive relief is available to protect property rights. *See Latham v. Karger*, 103 So.2d 336, 336 - 337 (Ala.1958) ("[i]t is now well settled here and elsewhere that injunctive relief is not limited to the protection of property rights,…."). Plaintiff has a well-recognized property right in his home and the real property to which it is attached. He is seeking to protect this property right by preventing the City of Tuskegee from demolishing his home or repairing the home as it wishes until he can resolve his claim against his insurer. Injunctive relief is particularly appropriate where, as here, a plaintiff seeks to avoid irreparable injury to property by maintaining the status quo until a final resolution can be made. *See Ex parte Finley,* 20 So.2d 98, 100 (Ala. 1944) (recognizing that "[i]njunctive relief will be accorded pending an action at law to preserve the status quo of the property until a final settlement of the rights involved, to prevent irreparable injury.").

Secondly, the threatened injury to Plaintiff is irreparable in the sense that if the City were to come in and demolish his home, the condition of his home and property, which is recognized by law as unique, could not be re-created. Lastly, the City's letter makes it very clear that it *will* proceed with demolition or repair if Plaintiff does not act within the time limits set forth therein. [Complaint, Exhibit 1].[2] If the City does move forward with demolition or repair of Plaintiff's home, money damages would be an inadequate remedy. *See Wilson v. Meyer,* 39 So. 317, 318 (Ala. 1905) (recognizing that "[i]n ordinary trespasses the injured party is left to his remedy of damages, but the circumstances of a trespass to property, especially to real property, may be such that the compensatory remedy is inadequate, and a court of equity will prevent the wrong by injunction."). The threatened injury to Plaintiff's property also far outweighs any harm a preliminary injunction merely preserving the status quo would impose on the City. Because Plaintiff's complaint states a valid claim for injunctive relief, this case is due to be remanded.

### 2. Mr. Baums is not required in this case to exhaust his administrative remedies.

General Insurance also claims that Mr. Baums has no possibility of obtaining injunctive relief against the City of Tuskegee because he has failed to exhaust his administrative remedies. [Notice of Removal, ¶ 6]. However, "Alabama law does not require the performance of a vain or useless act." *Mutual Assur., Inc. v. Wilson*, 716 So.2d 1160, 1165 (Ala.1998). The administrative remedies which Mr. Baums did not pursue relate to whether his property is in violation of the City's Property Maintenance Code. Mr. Baums does not dispute that due to General Insurance's failure to comply with its contractual obligations, his home is now in a

---

[2] Based on the language contained within the City of Tuskegee's March 1st letter, this is not a case where the injury to Plaintiff is only possible or theoretical. *See* Complaint, Exhibit 1 ("Failure to comply with these instructions within the stated period *will* result in further action by the City of Tuskegee.") (emphasis in original).

8

condition which violates the applicable City Code. He therefore sought equitable relief in the form of an injunction to prevent the City from demolishing his home while he pursued the funds rightfully owed him by General Insurance. Because Mr. Baums is not contesting the City's finding that his house violates the Property Maintenance Code, there is no requirement that he exhaust his administrative remedies prior to bringing this action and therefore General Insurance's contention that his Complaint presents no possibility of recovery against the City of Tuskegee is not well taken.

> **B.  Baums' claims against General Insurance and the City of Tuskegee are not fraudulently misjoined.**

General Insurance also seeks removal under the third test of fraudulent joinder, claiming that Plaintiff's claims against it and the City of Tuskegee are fraudulently misjoined. In order to satisfy their heavy burden of establishing fraudulent joinder, General Insurance must do more than merely show that joinder of the claims against it and the City is improper. It must instead prove that such joinder "is so *egregious* as to constitute fraudulent joinder". *Triggs*, 154 F.3d at 1289. (emphasis added).[3] In fact, General Insurance does not even contend in its removal petition that the joinder of claims against it and the City is so egregious as to constitute

---

[3]    In *Tapscott*, the case cited by General Insurance in support of its claim of fraudulent misjoinder, the plaintiffs were two separate classes asserting two separate and unrelated claims against two separate defendants. The first class, citizens of Alabama, asserted claims against defendants, also citizens of Alabama, arising out of the sale of service contracts on automobiles sold in Alabama. The second class of plaintiffs were Alabama citizens asserting claims against a different, diverse, defendant arising out of the sale of extended service contracts in connection with the sale of retail products. Because there was no reason that these two, unrelated sets of claims should be joined, the court in *Tapscott* found the joinder of such claims so egregious as to constitute fraudulent joinder and severed the two classes and the two claims. The facts of this case are far removed from *Tapscott* where there was no logical relationship between one set of plaintiffs' claims against the diverse defendant and another set of plaintiffs' claims against the nondiverse defendants. Here there is a definite connection between the failure of General Insurance to fulfill its legal obligations to Plaintiff and the fact that Plaintiff's home is now in such a state of disrepair that the City has promised to repair or demolish it.

fraudulent joinder. Instead, General Insurance merely argues that the claims have "no real connection" and therefore are "improper" under Rule 20 of the Federal Rules of Civil Procedure.[4] [Notice of Removal, ¶ 7].

To begin with, the claims asserted against General Insurance and the City of Tuskegee are not misjoined under Rule 20. "The central purpose of Rule 20 is to promote trial convenience and expedite the resolution of disputes, thereby eliminating unnecessary lawsuits." *Alexander v. Fulton County, Ga.*, 207 F.3d 1303, 1323 (11th Cir. 2000). Therefore, the rule "is liberally interpreted in favor of joinder." *Apache Products Co. v. Employers Ins. Of Wausau*, 154 F.R.D. 650, 659 (S.D.Miss.1994), *see also, United Mine Workers v. Gibbs*, 383 U.S. 715 (1966) ("joinder of claims, parties and remedies is strongly encouraged"). Despite General Insurance's conclusory allegations to the contrary, there is both a factual and logical connection between the claims asserted by Baums against it and the City of Tuskegee. Baums seeks several liability against General Insuarance and the City arising out of a common occurrence, the failure of General Insurance to pay insurance benefits to which Baums is entitled. Baums seeks money damages from General Insurance based upon its failure to pay and seeks injunctive relief against the City based upon the same factual predicate. As alleged in his Complaint, it is the failure of General Insurance to fulfill its contractual obligation which has prevented Baums from repairing his home and now resulted in the City promising to repair, demolish or remove Mr. Baums' home if it is not repaired within ninety days. [Complaint]. Therefore, the claims asserted are properly joined.

---

[4] Rule 20(a) provides as follows: "All persons ... may be joined in one action as defendants if there is asserted against them jointly, severally, or in the alternative, any right to relief in respect of or arising out of the same transaction, occurrence, or series of transactions or occurrences and if any question of law or fact common to all defendants will arise in the action."

Secondly, and more importantly, even if the claims asserted against the City of Tuskegee and those asserted against General Insurance were improperly joined under Rule 20 as alleged by General Insurance, that alone is insufficient to lead to the conclusion that the City has been fraudulently joined. The Eleventh Circuit, in the very case relied on by General Insurance in support of its misjoinder argument, specifically stated that "[w]e do not hold that mere misjoinder is fraudulent joinder." *Tapscott*, 77 F.3d at 1360. Instead, General Insurance must prove that joinder of it with the City of Tuskegee was "so *egregious* as to constitute fraudulent joinder". *Triggs*, 154 F.3d at 1289. Courts within this circuit have applied this principal in remanding cases where the misjoinder of parties was not so egregious as to be fraudulent and a sham. *See e.g. Raisanen v. Lolley*, 2001 WL 102362, *2 (S.D. Ala. 2001) (attached hereto as Exhibit A) (although noting that claims asserted by plaintiff against resident defendant were separate and distinct from claims asserted against non-resident defendant, Court nonetheless concluded that resident defendant was not fraudulently joined); *Ramey v. Gilbert,* 2005 WL 3149381, *3 (M.D. Ga. 2005) (attached hereto as Exhibit B) (remanding action and noting that even if the Court were to agree that plaintiffs misjoined the defendants and the connection between the claims was tenuous, the Court could not conclude that such "improper and fraudulent joinder bordered on a sham."); *see also Brooks v. Paulk & Cope, Inc.* 176 F.Supp.2d 1270, 1276 (M.D. Ala. 2001) (granting motion to remand and rejecting defendants' fraudulent misjoinder argument where plaintiff's claims against diverse and non-diverse defendants arose out of a common occurrence and plaintiff sought several liability against the defendants).

**Conclusion**

Because General Insurance has failed to carry its heavy burden of establishing fraudulent joinder of the City of Tuskegee, this case is due to be remanded to the Circuit Court of Macon County.

/s J. David Martin
J. David Martin, Esq. (MAR120)
Mitchel H. Boles (BOL029)

COPELAND, FRANCO, SCREWS & GILL, P.A.
444 S. Perry Street (36104)
Post Office Box 347
Montgomery, Alabama 36101-0347
Telephone:    (334) 834-1180
Facsimile:    (334) 834-3172
Email: martin@copelandfranco.com
Email: boles@copelandfranco.com

**COUNSEL FOR PLAINTIFF -
ARCIDUS BAUMS**

**CERTIFICATE OF SERVICE**

I hereby certify that on 19th day of July, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Katy Smith Campbell**
  kcampbell@csspca.com ebryant@csspca.com
- **Ronald G. Davenport**
  rgd@rsjg.com cc@rsjg.com
- **LaTasha Antoinette Meadows**
  lmeadows@csspca.com tmarshall@csspca.com

/s J. David Martin
Of Counsel