IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| **ARCIDUS BAUMS,** | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Case Number 3:06-cv-00558-MEF |
| | * | |
| **GENERAL INSURANCE CO.** | * | |
| **OF AMERICA, et al.,** | * | |
| | * | |
| Defendants. | * | |

## OPPOSITION AND REPLY TO PLAINTIFF'S MOTION TO REMAND

This action concerns a dispute between Plaintiff, Arcidus Baums ("Baums" or "Plaintiff"), and Defendant General Insurance Co. of America ("GICA"), a Washington corporation with its principal place of business in Washington, over insurance proceeds payable under a fire policy issued by GICA. In short, Plaintiff alleges that GICA underpaid a fire claim when it adjusted a fire loss at $17,000 compared to the $42,200 to $61,200 claimed by Plaintiff. [*See* Compl., ¶¶ 12, 15 & 16]. Based upon this difference in opinion, Plaintiff filed suit against GICA in the Circuit Court of Macon County, Alabama for Breach of Contract and Bad Faith.

Though he asserts no claim to civil liability, nor raises any allegation of wrongful, illegal, or improper conduct, Plaintiff also names as a defendant The City of Tuskegee ("the City"). In his count for Injunctive Relief, Plaintiff asserts that the City should be enjoined from enforcing a city ordinance (City of Tuskegee Ordinance No. 2004-5) that Plaintiff

1

readily admits is valid, constitutional, and correctly applied under the facts in the case. Despite these admissions, Plaintiff nevertheless asserts that an injunction should be entered against the City to preserve the "status quo"; that is, to enjoin the City from enforcing its rights under the ordinance until such time that Plaintiff can obtain the necessary funds from GICA to fix his home. Relying upon this allegation, Plaintiff asserts that the City is a proper party to this lawsuit and, therefore, its presence defeats diversity jurisdiction and precludes GICA from removing this case from the Circuit Court of Macon County, Alabama to this Court.

Plaintiff's logic, however, is flawed and the City's presence in this lawsuit, whether proper or not (fraudulently joined), does not preclude this Court from exercising jurisdiction over this matter. Therefore, Plaintiff's Motion to Remand is due to be Denied.

## ARGUMENT

It is without dispute that this action concerns *solely* the determination of the amount of insurance proceeds payable under an insurance policy issued by GICA. It is further undisputed that GICA is totally diverse from Plaintiff and that the amount in controversy is in excess of $75,000. Therefore, the issue presented for the Court is whether the addition of The City of Tuskegee as a Defendant, against whom an injunction is sought merely to preserve the *status quo*, can be used as a sword to defeat what otherwise is GICA's clear right to have the claims asserted against it heard in this Court. As discussed in more detail hereafter, joinder of the City as a Defendant does not destroy this Court's jurisdiction

2

because (1) the City has been fraudulently joined or, alternatively, (2) the City is merely a nominal party whose citizenship is to be ignored.

### **Fraudulent Joinder**

The fraudulent joinder of local defendants is a common tactic by plaintiffs who seek to avoid federal court. As the United States Supreme Court has long recognized, however, a defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant . . . ." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). "While the presence of a plaintiff and defendant residing in the same state normally precludes federal jurisdiction based on diversity of citizenship, diversity jurisdiction "cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy." *Meigs v. CSX Transp., Inc.*, 2005 U.S. Dist. LEXIS 34814, at *3 (M.D. Ala. 2005)(Fuller, C.J.)(quoting *Jeter v. Orkin Exterminating Co.*, 84 F.Supp.2d 1334, 1337 (M.D. Ala. 2000)). Thus, a plaintiff cannot name parties of the same citizenship merely to avoid removal of an action to federal court. *See Pensigner v. State Farm Fire & Cas. Co.*, 347 F. Supp. 2d 1101, 1105 (M.D. Ala. 2003). The Eleventh Circuit recently reaffirmed this long-standing law when it stated: "the federal courts should not sanction devices intended to prevent removal to a federal court where one has that right, and should be equally vigilant to protect the right to proceed to federal court." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (*quoting Wecker v. Nat'l Enameling and Stamping Co.*, 204 U.S. 176, 186 (1907)).

The Eleventh Circuit has found fraudulent joinder in three situations: where (1) "there

because (1) the City has been fraudulently joined or, alternatively, (2) the City is merely a nominal party whose citizenship is to be ignored.

### **Fraudulent Joinder**

The fraudulent joinder of local defendants is a common tactic by plaintiffs who seek to avoid federal court. As the United States Supreme Court has long recognized, however, a defendant's "right to removal cannot be defeated by a fraudulent joinder of a residential defendant . . . ." *Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921). "While the presence of a plaintiff and defendant residing in the same state normally precludes federal jurisdiction based on diversity of citizenship, diversity jurisdiction "cannot be defeated by a fraudulent joinder of a residential defendant having no real connection to the controversy." *Meigs v. CSX Transp., Inc.*, 2005 U.S. Dist. LEXIS 34814, at *3 (M.D. Ala. 2005)(Fuller, C.J.)(quoting *Jeter v. Orkin Exterminating Co.*, 84 F.Supp.2d 1334, 1337 (M.D. Ala. 2000)). Thus, a plaintiff cannot name parties of the same citizenship merely to avoid removal of an action to federal court. *See Pensigner v. State Farm Fire & Cas. Co.*, 347 F. Supp. 2d 1101, 1105 (M.D. Ala. 2003). The Eleventh Circuit recently reaffirmed this long-standing law when it stated: "the federal courts should not sanction devices intended to prevent removal to a federal court where one has that right, and should be equally vigilant to protect the right to proceed to federal court." *Legg v. Wyeth*, 428 F.3d 1317, 1325 (11th Cir. 2005) (*quoting Wecker v. Nat'l Enameling and Stamping Co.*, 204 U.S. 176, 186 (1907)).

The Eleventh Circuit has found fraudulent joinder in three situations: where (1) "there

is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant," (2) "there is outright fraud in the plaintiff's pleading of jurisdictional facts," and (3) "there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Meigs v. CSX Transp., Inc.*, 2005 U.S. Dist. LEXIS 34814, at *4-*5 (M.D. Ala. 2005)(quoting *Triggs v. John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998)). Here, fraudulent joinder exists under the first and third varieties of fraudulent joinder.

### 1. There is No Possibility That Plaintiff Can Prove a Cause of Action Against the City.

Under the first type of fraudulent joinder, federal jurisdiction can be sustained where there is no "*possibility* that a state court would find that the complaint states a cause of action against . . . the resident defendant[]." *Triggs*, 154 F.3d at 1287 (internal quotations omitted). "The plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate." *Id.* While the court must make this determination based on the plaintiff's pleadings at the time of removal, "the court may consider affidavits and deposition transcripts submitted by the parties." *Crowe v. Coleman*, 113 F.3d 1536, 1538 (11th Cir. 1997).

Here, the sole claim against the City is a claim for injunctive relief in which Plaintiff seeks to enjoin the City from demolishing or repairing Plaintiff's fire-damaged home. [*See* Compl., Wherefore para.]. In other words, Plaintiff seeks an injunction prohibiting the City

4

from enforcing its Property Maintenance Code (City of Tuskegee Ordinance No. 2004-5), which Plaintiff readily admits is valid, enforceable and appropriately applied given the condition of Plaintiff's home. In his Motion to Remand, Plaintiff argues that he is entitled to a preliminary injunction because he can show (1) that he has presented a fair question as to the existence of the right to be protected; (2) the injunction is necessary to prevent an irreparable injury; and (3) the injury threatened is immediate and irreparable in the court of law. [*See* Doc. No. 8; Mtn. Remand, p. 7, citing *Double C. Promotions, Inc. v. Exposition Enterprises, Inc.*, 404 So. 2d 52, 54 (Ala. 1981)]. *See also Gulf House Association, Inc v. Town of Gulf Shores, Alabama*, 484 So. 2d 1061, 1064 (Ala. 1985)("A permanent injunction will be granted when there exists a clear, specific, legal right requiring protection and the injunction is necessary to prevent irreparable injury and there is no adequate remedy at law."); *Johnson v. United States Dept. of Agriculture*, 734 F.2d 774, 781 (11th Cir. 1984). In this regard, Plaintiff argues that he has a property right in his home and therefore has a right to protect against its demolition or repair by the City so long as his lawsuit against GICA remains pending. [*See* Doc. No. 8; Mtn. Remand, p. 7]. Plaintiff goes on to argue that he is threatened by irreparable injury if the City were to demolish or repair the home. [*See* Doc. No. 8; Mtn. Remand, p. 8]. Therefore, based upon these considerations, according to Plaintiff, a preliminary injunction is appropriate to protect against possible action by the City. Neither Plaintiff's Complaint, nor his Motion to Remand, however, demonstrate that there is a possibility a state court might enter a preliminary injunction against the City.

First and foremost, Plaintiff has no lawful right to prevent against enforcement of Ordinance No. 2004-5. *See, e.g.*, *City of Trussville v. Porter*, 187 So. 2d 224, 227 (Ala. 1966). In this regard, there is no allegation that Ordinance No. 2004-5 is invalid, illegal, or unconstitutional, or that its enforcement is conditioned upon Plaintiff's financial means or sources to comply with the Ordinance. Indeed, Plaintiff admits not only that Ordinance No. 2004-5 is valid, but that it is being appropriately applied in this case. Equity is available to challenge the validity of proceedings for fundamental defects that go to the jurisdiction and render the proceedings void, but <u>it cannot be extended to preclude enforcement of a valid and correctly applied ordinance</u>. *See Ex parte Finley*, 20 So. 2d 98 (Ala. 1944); *Gulf House Association, Inc v. Town of Gulf Shores, Alabama*, 484 So. 2d 1061, 1064 (Ala. 1985)(affirming denial of request for injunction for enforcement of a valid ordinance); *Whittle v. Nesmith*, 51 So. 2d 6 (Ala. 1951)("It is settled that injunction will lie to enjoin the threatened enforcement of an *invalid* ordinance when the lawful use and enjoyment of private property will be injuriously affected by its enforcement. . ."); *City of Russellville v. Vulcan Materials Co.*, 382 So. 2d 525, 527 (Ala. 1980)(noting that a court may enjoin enforcement of an unreasonable or invalid ordinance); *Birmingham v. Link Carnival, Inc.*, 514 So. 2d 792 (Ala. 1987)(concluding that city could not be enjoined for exercising its rights).

Moreover, Plaintiff's failure to comply with Ordinance No. 2004-5 is unlawful. It is

well-settled that an injunction cannot be used to embrace or further unlawful activities.[1] *See City of Trussville v. Porter*, 187 So. 2d 224, 227 (Ala. 1966)(concluding that trial court erred in enjoining City from exercising rights under a valid ordinance). In fact, to embrace Plaintiff's logic and argument in this case, would render powerless any municipality from enforcement of a valid and applicable ordinance. In this case, it would altogether nullify Ordinance No. 2004-5 (whose purpose is to protect the public health) under any allegation of an inability to pay or comply. This was not the intent of the drafters of Ordinance No. 2004-5, does not support the public good and well-being, and in fact, can, and will, result in potentially dangerous consequences. Accordingly, the claim for injunctive relief fails to state a claim because Plaintiff's requested relief seeks to further Plaintiff's unlawful activity, i.e., his continuing failure to abide by the Ordinance and remedy a potentially dangerous condition.

In addition, any right Plaintiff may have to contest the City's application or enforcement of Ordinance Number 2004-5 was lost and waived when Plaintiff failed to object or appeal enforcement of the Ordinance, which was a right afforded him under the Ordinance itself. [*See* Doc. No. 1, Ex. D thereto]. In other words, exhaustion of remedies is a prerequisite to court action concerning enforcement of an ordinance. *See, e.g., City of Gadsden v. Entrekin*, 387 So. 2d 829 (Ala. 1980)(concluding that landowner could not enjoin

---

[1] To the contrary, if any party is entitled to an injunction or equitable relief, that party would be the City in the form of a court order requiring Plaintiff to comply with Ordinance No. 2004-5.

enforcement of zoning ordinance when landowner had failed to exhaust administrative remedies); *Cuz, Inc v. Walden*, 261 So. 2d 37 (Ala. 1972)(affirming dismissal of complaint concerning housing ordinance because of plaintiff's failure to exhaust administrative remedies). In short, Plaintiff's admitted failure to exhaust his administrative remedies bars his claim for injunctive relief.

Plaintiff argues that his noncompliance with his administrative remedies should be ignored because it would have been a vain or useless act. [*See* Doc. No. 8; Mtn. Remand, p. 8]. Plaintiff, however, presents no evidence as to why it would have been vain or useless to appeal enforcement of the ordinance. To the contrary, Exhibit 1 hereto clearly shows that had Plaintiff merely informed the City of his intention to file suit against GICA, the City would have delayed any action in enforcing the pertinent ordinance. Indeed, Plaintiff's argument that the exhaustion of administrative remedies does not apply because he does not contest the City's ability to enforce Ordinance No. 2004-5 defies logic. If the City has every right to enforce Ordinance No. 2004-5 as Plaintiff readily admits, then how can Plaintiff seek and obtain injunctive relief precluding enforcement of that ordinance? Simple put, he cannot. To do otherwise, renders enforcement of any valid ordinance subject to the various excuses propounded by the aggrieved.

Another reason that Plaintiff's claim for injunctive relief fails to state a claim is because there is no immediate threat of irreparable injury. As shown by Exhibit 1, the City consents and agrees that it will not take any action with respect to Plaintiff's property while

8

Plaintiff is pursuing this lawsuit against GICA As Plaintiff's claimed entitlement to an injunction is the threat of action by the City (which the City agrees it will not take), Plaintiff cannot show that an injunction is necessary to prevent irreparable and immediate injury. *See Double C. Productions, Inc v. Exposition Enterprises, Inc.*, 404 So. 2d 52, 54 (Ala. 1981)(discussing the standard for entry of an injunction).

In short, there being no allegation of wrongful, illegal, unconstitutional, or inappropriate conduct by the City, accompanied by Plaintiff's failure to exhaust his administrative remedies, Plaintiff's Complaint fails to state a claim against the City. *See, e.g., Pesch v. First City Bank of Dallas*, 637 F. Supp. 1530 (N.D. Tex. 1986)(concluding that nondiverse defendant, against whom injunction was sought, was fraudulently joined because there was no allegation that it did anything wrong or violated the law and because it was a neutral bystander to a battle between the other parties). Therefore, the City is fraudulently joined and its citizenship should be ignored.

**2. There is No Joint, Several or Alternative Liability Between the Defendants and the Claim Against the City has No Real Connection to the Claims Against GICA.**

Fraudulent joinder also exists under the <u>third</u> variety of fraudulent joinder, i.e., when "there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Meigs v. CSX Transp., Inc.*, 2005 U.S. Dist. LEXIS 34814, at *4-*5 (M.D. Ala. 2005)(quoting *Triggs v John Crump Toyota*, 154 F.3d 1284, 1287 (11th Cir. 1998)). To properly join two or more defendants in one action, the plaintiff must allege facts that show that the right to relief

asserted against the defendants arises out of the same transaction, occurrence, or series of transactions or occurrences, and that a question of law or fact is common to both defendants and will arise in the action. *See* Fed.R.Civ.P. 20(a). Though mere misjoinder does not rise to the level of fraudulent joinder, it can rise to such a level when joinder is *egregious*. *See Triggs*, 154 F.3d at 1289.

Here, joinder of the City is *so egregious* to rise to the level of fraudulent joinder. First and foremost, there is no joint, several or alternative liability between the Defendants because Plaintiff does not seek any liability against the City whatsoever. Instead, Plaintiff merely seeks an injunction against the City maintaining the *status quo*.

Further, though Plaintiff argues otherwise, there is no "real connection" between the claims against GICA and the injunctive relief sought against the City. Though Plaintiff attempts to make this connection via his argument that injunctive relief against the City is dependent upon recovery against GICA, this connection is not supported in the law. Indeed, the right of the City to enforce its ordinance (and therefore the right, if any, to oppose it), bears no connection to Plaintiff's <u>source</u> of funds to remedy the violation, nor his ability to recover funds from his insurance carrier. In other words, enforcement of the Ordinance is not conditioned upon the outcome of Plaintiff's lawsuit against GICA. The ability to enforce, and therefore to oppose, Ordinance No. 2004-5 is separate, apart and wholly unrelated to the claims against GICA and therefore does not arise out of the same transaction or occurrence, nor does it involve a common question of law or fact. Under these

circumstances, joinder of the City is *so egregious* as to constitute fraudulent joinder.

### The City Is a Nominal Party and Therefore its Existence Should Be Ignored.

Assuming that Plaintiff could obtain injunctive relief against the City under the circumstances in this case and assuming that the City is not fraudulently joined, the City's citizenship nevertheless should be ignored because the City is a nominal party.

28 U.S.C. § 1441(b) permits removal of an action to federal court if there is diversity of citizenship among the "parties in interest properly joined." "Parties in interest" do not include formal or unnecessary parties, and thus a plaintiff's joinder of such parties cannot defeat a federal court's subject matter jurisdiction. *See Navarro Sav. Ass'n v. Lee*, 446 U.S. 458 (1980)(stating that a federal court must disregard nominal or formal parties and rest jurisdiction only upon the citizenship of real parties to the controversy); *Wynn ex rel. Ala. v. Philip Morris*, 51 F.Supp.2d 1232, 1250-51 (N.D. Ala. 1999)(discussing nominal parties). The test as to whether or not a defendant is a nominal party is whether his role in the lawsuit is that of a depositary or stakeholder. *See Tri-Cities Newspapers, Inc. v. Tri-Cities Printing Pressman and Assistants' Local 349*, 427 F.2d 325, 327 (5th Cir. 1970). Where a defendant's presence is merely to preserve the *status quo* and the defendant has no rights to be contravened, it is a nominal or formal party, whose presence does not preclude removal. *See, e.g., Pesch v. First City Bank of Dallas*, 637 F.Supp. 1530 (N.D. Tex. 1986)(concluding that citizenship of nondiverse defendant against whom plaintiff sought injunction to preserve *status quo*, should be ignored because it had no rights to be contravened; i.e., it was merely a

11

bystander to a battle between the other parties); *Kearney v. Dollar*, 111 F.Supp. 738 (D.Del. 1953)(same). In other words, where the nondiverse defendant is a "neutral bystander" to the disputes between the other parties, it is a nominal party whose citizenship can be ignored. *See, e.g., Pecsh*, 637 F.Supp. at 1539; *Rose v. Giamatti*, 721 F.Supp. 906, 921 (S.D. Ohio 1989)(same).

Here, the claim for injunctive relief merely seeks to preserve the *status quo*. [*See* Doc. No. 8, Mtn. Remand, p. 7 (stating that "plaintiff seeks to avoid irreparable injury to property by maintaining status quo")]. Plaintiff does not seek a determination that the City's Ordinance is invalid, illegal, unconstitutional or that the City has no right to enforce it. Neither does Plaintiff seek to contravene any right of the City. Instead, Plaintiff merely seeks to delay the City's enforcement of a valid ordinance while he resolves his claims against GICA, thereby rendering the City as nothing more than a neutral bystander to the battle between Plaintiff and GICA. *See Pesch*, 637 F.Supp. at 1539. Under these circumstances, the City is merely a nominal or formal party whose presence does not preclude removal.

## **CONCLUSION**

As shown in GICA's Petition for Removal and as more fully discussed in this brief, The City of Tuskegee has been fraudulently joined as a defendant in this matter. Alternatively, if The City of Tuskegee has not been fraudulently joined, The City of Tuskegee is merely a nominal party whose citizenship should be ignored. Accordingly, there being complete diversity between the real parties to this controversy, Plaintiff's Motion to

Remand is due to be Denied.

/s/ Ronald G. Davenport
RONALD G. DAVENPORT
Attorney for Defendant General Insurance Co. of America

OF COUNSEL:
RUSHTON, STAKELY, JOHNSTON &
  & GARRETT, P.A.
Post Office Box 270
Montgomery, AL 36101
(334) 206-3100 Telephone
(334) 481-0804 Fax
E-mail: rgd@rsjg.com

## CERTIFICATE OF SERVICE

I hereby certify that on August 8, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

J. David Martin, Esq.
Mitchel H. Boles, Esq.
Copeland, Franco, Screws & Gill, P.A.
P. O. Box 347
Montgomery, AL 36101-0347

Latasha Meadows, Esq.
Chestnut, Sanders, Sanders,
  Pettaway & Campbell, LLC
P. O. Box 1290
Selma, AL 36702-1290

s/ Ronald G. Davenport
Of Counsel