**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION**

| | |
|---|---|
| **ARCIDUS BAUMS,** ) | |
| ) | |
|     **Plaintiff,** ) | |
| ) | **CIVIL ACTION NUMBER:** |
| **v.** ) | **3:06-cv-00558-MEF** |
| ) | |
| **GENERAL INSURANCE COMPANY OF** ) | |
| **AMERICA; CITY OF TUSKEGEE;** ) | |
| **et al.** ) | |
| ) | |
|     **Defendants.** ) | |

**PLAINTIFF'S RESPONSE IN SUPPORT OF MOTION TO REMAND**

Plaintiff Arcidus Baums hereby submits this Reply in support of his Motion to Remand.

**I.    Introduction**

According to the verified Complaint, this case involves a Plaintiff who had fire insurance with Defendant General Insurance Company of America ("General Insurance"). [Complaint, ¶ 8]. Following a fire loss, General Insurance breached the policy of fire insurance and committed bad faith in failing and refusing to pay the Plaintiff the amount he was entitled under the terms of the policy. [*Id.* at ¶s 20-32]. As a direct and proximate result of General Insurance's wrongful and illegal conduct, Plaintiff had insufficient funds with which to repair the fire damage to his home. [*Id.* at ¶s 17-19]. Because of the damaged condition of Plaintiff's home, the City of Tuskegee ("the City") issued a letter to the Plaintiff declaring that his home was in violation of the maintenance code and promising, in no uncertain terms, that if Plaintiff did not repair his home, it "*will be* restored, demolished or removed at the direction of the City. Any and all costs (including administrative fees) associated with the remediation will be assessed to you and will constitute a lien against the property." [Complaint, Exhibit 1] (emphasis added). In response to

these events, Plaintiff filed suit against his insurer for breach of contract and bad faith, and sought a preliminary injunction to prevent the City from demolishing his home until he can recover the funds rightfully due and owing under the policy and repair his home with the insurance funds.

General Insurance removed the case, claiming that the City was fraudulently joined because Plaintiff had no possibility of obtaining the injunctive relief he sought and because his joinder of claims against the City was so egregious to rise to the level of fraudulent joinder. General Insurance contends that Plaintiff has no possibility of obtaining an injunction against the City under these facts because a court of equity would force him to sit idly by while his home is destroyed, despite the fact that such destruction could be avoided by forcing his insurance company to pay funds rightfully due and owing.  In attempting to avoid remand, General Insurance props up a series of affirmative defenses and attempts to present inadmissible evidence in an effort to have this Court engage in an improper merits analysis of whether Plaintiff can ultimately prevail against the City.  *See Henderson v. Washington National Ins. Co.,* 2006 WL 1867353 *5 (11th Cir. July 7, 2006) (attached hereto as Exhibit A) (reversing district court's denial of plaintiff's motion to remand where plaintiff's complaint sufficiently alleged the elements necessary to state a claim under Alabama law.).  All of the arguments raised by General Insurance fail under Alabama law and the standard for fraudulent joinder, and this case is due to be remanded.

As an initial matter, General Insurance takes an overly narrow view of Plaintiff's complaint in asserting that "[i]t is without dispute that this action concerns *solely* the determination of the amount of insurance proceeds payable under an insurance policy issued by GICA." [Opposition and Reply, p. 2] (emphasis in original).  Plaintiff strongly disagrees with

this overly narrow characterization of his Complaint. As reflected by the allegations of the verified Complaint, this action concerns two related issues: (1) did General Insurance breach its contract of insurance with Plaintiff and commit bad faith in its adjustment and payment of a fire loss at Plaintiff's home; and (2) should a preliminary injunction be issued preventing the City of Tuskegee from demolishing or repairing Plaintiff's home until such time as it can be determined whether Plaintiff is entitled to recover from General Insurance for breach of contract and bad faith.[1]

In considering Plaintiff's Motion to Remand, it is important for this Court to understand that this is not a case where the Plaintiff has simply come into court and asked that a municipality be prevented from enforcing an ordinance because the Plaintiff has no money or because of some other unfortunate hardship. As set forth in the Complaint, Plaintiff's inability to comply with the City's maintenance code is a direct and proximate result of the wrongful and illegal failure of General Insurance to comply with its duties and obligations under a policy of fire insurance. [Complaint, ¶s 17-19]. Therefore, this is not a case where a citizen is simply seeking relief from an ordinance because of misfortune or bad luck, but as a direct result of the wrongful and illegal conduct of a co-defendant.

**II.     General Insurance cannot carry its burden to prove that there is no possibility that Plaintiff can obtain an injunction against the City in this case.**

General Insurance's first argument in opposition to remand is that "there is no possibility that a state court would find that the complaint states a cause of action against… the resident defendant" and, therefore, the City has been fraudulently joined. [Opposition and Reply, p. 4]. General Insurance submits that there is no possibility that Plaintiff could obtain a preliminary

---

[1] It is without dispute that Plaintiff intends to utilize any additional funds recovered from General Insurance to repair his home and remedy the maintenance code violation he has been cited for.

injunction preventing the City from destroying or repairing his home because Plaintiff: (1) does not contend that the City has acted wrongfully, illegally or unconstitutionally in seeking to enforce its maintenance code; (2) the plaintiff is seeking to benefit from his own illegal conduct in not complying with the City's maintenance code; (3) the plaintiff failed to exhaust the available administrative remedies; and (4) there is no immediate threat of irreparable injury to the Plaintiff. [Opposition and Reply, p. 4-9]. As shown below, each contention of General Insurance is without merit, and this case is due to be remanded to the Circuit Court of Macon County.

### A.     Equitable relief is available against the City even if the City acted legally and is without fault.

General Insurance contends that Plaintiff cannot obtain a preliminary injunction against the City because he does not contend that the City has acted wrongfully, illegally or unconstitutionally in seeking to demolish or repair his home. Plaintiff would agree that if this were merely a case between Plaintiff and the City, where Plaintiff was contending that he did not have the money to repair his home and was asking for an injunction to prevent the City from enforcing an otherwise valid and legal ordinance, he would not be entitled to injunctive relief. However, this case is far different, as Plaintiff's inability to afford the repairs necessary to remedy the fire damage to his home (which lead to the violation of the City's Maintenance Code) is a direct and proximate result of General Insurance's illegal and improper conduct. Injunctive relief is therefore particularly appropriate to prevent the destruction of Plaintiff's home while he seeks to obtain the funds rightfully owed him by General Insurance, with which he will then repair his home and remedy the violation of the City's ordinance. *See Ex parte Finley,* 20 So.2d 98, 100 (Ala. 1944) (recognizing that "[i]njunctive relief will be accorded pending an action at

law to preserve the status quo of the property until a final settlement of the rights involved, to prevent irreparable injury.").

Contrary to the basic premise of General Insurance's argument, it is not a requirement of equity that the party against whom relief is sought be engaged in wrongful or illegal conduct. Instead, equity is "the power to meet the moral standards of justice in a particular case by a tribunal having discretion to mitigate the rigidity of the application of strict rule of law so as to adapt the relief to the circumstances of the particular case." Davis, Tilley's Alabama Equity (4th Ed.), § 1-1 (citations omitted). In adapting equitable relief to the circumstances of a particular case, it is perfectly permissible under the law to apply an equitable remedy against an innocent party. Take for example a situation where an uneducated man is fraudulently induced to execute a deed that does not contain the identity of the grantee. The deed is completed and the person who induced the grantor to execute the deed in the first place sells the property to an innocent third party. While a court of law may not provide a remedy against the innocent third party who owns the property, a court of equity will void not only the original deed, but also the subsequent deed to the innocent purchaser. *See Bardin v. Grace,* 52 So. 425, 426 (Ala. 1910) (recognizing that under such a circumstance, if a deed is void, a subsequent deed to an innocent purchaser is also void). The reason is because equity does not require wrongdoing on the party against whom equity is sought, but is instead focused on balancing the equities between the parties before it.

In balancing the equities in this case, the trial court will review the evidence and exercise its discretion in deciding whether to grant Plaintiff the equitable relief he seeks, or deny the injunction and allow the City to go forward with its planned demolition or repair of Plaintiff's home. Whether the Plaintiff ultimately obtains the injunctive relief he seeks is not the standard to be applied on remand, but instead the issue is whether there is a ***possibility*** that a State Court

5

would provide him such relief. *See Triggs v. John Crump Toyota*, 154 F.3d 1284, 1289 (11th Cir.1998)("[t]he plaintiff need not have a winning case against the allegedly fraudulent defendant; he need only have a *possibility* of stating a valid cause of action in order for the joinder to be legitimate.") (emphasis in original). Given that the substantial wrongdoing of General Insurance has directly resulted in Plaintiff's home being threatened with demolition by the City, Plaintiff's complaint states a claim for equitable relief under Alabama law.[2] *See* Davis, Tilley's Alabama Equity (4th Ed.), § 1-4(l) (recognizing that "[i]f a wrong has been committed, the court of equity, in order to provide justice under the facts and circumstances, has the power to frame a decree that will provide the aggrieved party a remedy, subject to the general principles of equity.").

### B. Plaintiff is not seeking to benefit from his illegal conduct in seeking an injunction.

General Insurance next argues that because Plaintiff is in violation of the City's maintenance code, he is disqualified from seeking injunctive relief. [Opposition and Reply, p. 6-7].[3] In support of this argument, General Insurance cites *City of Trussville v. Porter*, 187 So.2d 224 (Ala. 1966). In *City of Trussville*, a company had illegally opened a rock quarry without a

---

[2] The fact that the City is a municipal corporation does not give it a free pass in a court of equity. As Alabama law has long recognized "equity will interfere in favor of or against municipal corporations on the same principals by which it is guided in other cases." *Port of Mobile v. Louisville & N. R. Co.* 4 So. 106, 112 (Ala. 1888).

[3] General Insurance claims that adopting Plaintiff's argument would "render powerless any municipality from enforcement of a valid and applicable ordinance … under any allegation of an inability to pay or comply." [Opposition and Reply, p. 7]. Again, General Insurance takes an overly narrow view of this case and then attempts to blow it out of proportion. If Plaintiff were merely seeking an injunction to prevent enforcement of this ordinance because he could not afford the repairs, he would not be entitled to injunctive relief. This case is vastly different. Plaintiff's inability to pay is instead a direct and proximate result of General Insurance' illegal and wrongful conduct. Therefore, Plaintiff is legally entitled to come into a court of equity and seek an injunction to prevent the destruction of his property until such time as he can recover the funds properly due and owing him under his policy of insurance.

permit. Employees of the company sought to enjoin the city from arresting them while they worked at the illegal quarry. The Alabama Supreme Court reversed the decision of the trial court to grant the injunction, recognizing that the employees stood in the shoes of their employer and therefore were seeking to benefit from their own illegal activity by obtaining an injunction. *Id.* at 227.

This case is factually distinguishable from *City of Trussville*. Here, the illegal and wrongful activity which placed Plaintiff in the position of having to seek injunctive relief was the refusal of General Insurance to abide by its obligations under the policy of fire insurance. [Complaint]. Plaintiff obviously does not stand in the shoes of his insurer and, therefore, his violation of the ordinance at issue is a direct and proximate result of a third party's actions, not his own. *City of Trussville* is inapposite and erects no barrier for the Plaintiff to obtain the injunctive relief he seeks.

### C. Plaintiff was not required to exhaust his administrative remedies.

General Insurance also argues that Plaintiff has no possibility of obtaining injunctive relief against the City because he failed to exhaust his administrative remedies. The two cases relied on by General Insurance are distinguishable from this case in that both involved a plaintiff who sought injunctive relief against a city based upon a determination of the city with which the plaintiff disagreed. *See City of Gadsden v. Entrekin*, 387 So.2d 829 (Ala. 1980) (plaintiff who disputed city building official's denial of her request for a building permit was not entitled to injunctive relief against the city where she failed to follow the ordinance's requirement that a party denied a permit appeal such denial to the City Board of Adjustments and Appeals); *Cuz, Inc. v. Walden,* 261 So.2d 37 (Ala. 1972) (plaintiffs who challenged validity of housing

7

ordinance and contended their property was not in violation were required to exhaust administrative remedies prior to seeking injunctive relief).

The administrative remedies which Mr. Baums admittedly did not pursue relate to whether his property was in violation of the City's Property Maintenance Code. [Complaint, Exhibit 1] ("You have the right to appeal the determination that the property conditions violate the relevant codes."). As discussed in Plaintiff's Motion to Remand, it would have been futile for Plaintiff to pursue this administrative remedy where he does not dispute that as a result of the failure of General Insurance to pay the amounts due and owing under the policy, his home is now in violation of the City's Maintenance Code.[4] As recognized by one of the very cases relied on by General Insurance, "administrative remedies need not be exhausted where doing so would be futile…." *City of Gadsden,* 387 So.2d at 833. Plaintiff's failure to exhaust his administrative remedies does not bar his suit for injunctive relief.

> **D.    The City's promise to demolish or repair Plaintiff's home clearly satisfies the requirement of an immediate threat of irreparable injury.**

Interestingly, General Insurance next attempts to defeat Plaintiff's right to injunctive relief by offering a letter dated August 7, 2006 from counsel for the City to counsel for General Insurance offering to not take action against Plaintiff's property and providing the speculative opinion that if Plaintiff had come to the City before filing suit, he "could have received a stay of proceedings…." [Exhibit 1 to Opposition and Reply]. As set forth in more detail in the Motion to Strike filed contemporaneously herewith, this letter is not evidence and constitutes

---

[4]    General Insurance complains that Plaintiff has failed to present any evidence that his appeal would have been vain and useless. [Opposition and Reply, p. 8]. Plaintiff is at a loss as to what evidence he would need to provide where the administrative remedies are provided for individuals to appeal a determination with which he agrees. Common sense would seem to indicate that it is a vain and useless act to appeal a determination with which you agree.

8

inadmissible hearsay which cannot be considered in deciding the issue of fraudulent joinder.[5]

In its March 1, 2006 letter to Plaintiff, which lead him to seek injunctive relief, the City made it abundantly clear that it would proceed with demolishing or repairing Plaintiff's home if he did not make appropriate repairs within 60 to 90 days. [Complaint, Exhibit 1].[6] As alleged in his Complaint, Plaintiff is not faced with mere possible or theoretical damage to his property, but instead faces an imminent threat of irreparable harm and, therefore, has stated a claim for injunctive relief against the City.

### III. Plaintiff has not fraudulently mis-joined the City.

General Insurance argues in the alternative that the City has been fraudulently mis-joined in this action because "there is no joint, several or alternative liability and [] the claim against [General Insurance] has no real connection to the claim against [the City]." [Opposition and Reply, p. 9-10].[7] It begins by claiming that because Plaintiff merely seeks a preliminary injunction against the City to maintain the *status quo*, he is not seeking to assert any liability against the City at all and, therefore, cannot satisfy the requirement or Rule 20 that there be "joint, several or alternative liability". General Insurance cites no case law in support of this

---

[5] "The court cannot consider hearsay in ruling on the fraudulent joinder issue." *Bloodsworth v. Smith & Nephew*, 2005 WL 3470337, *9 (M.D.Ala. 2005) (attached as Exhibit B).

[6] The City's letter to Plaintiff stated in pertinent part: "**Do not disregard this notice!** Failure to comply with these instructions within the stated period *will* result in further action by the City of Tuskegee. The property will be restored, demolished or removed at the direction of the City. Any and all costs (including administrative fees) associated with the remediation will be assessed to you and will constitute a lien against the property." [Complaint, Exhibit 1] (emphasis in original).

[7] This of course is a reference to Rule 20 of the Federal Rules of Civil Procedure regarding permissive joinder of parties. As the Eleventh Circuit has stated, a defendant claiming fraudulent mis-joinder must show more than mere improper joinder under Rule 20. Instead, to support removal, the joinder must be "so egregious as to constitute fraudulent joinder." *Triggs,* 154 F.3d at 1289 (emphasis added).

contention. An adoption of this argument would mean that any time a plaintiff seeks to join a claim seeking a preliminary injunction to maintain the *status quo* against a resident defendant with any claim against a non-diverse defendant, the plaintiff has engaged in fraudulent joinder. Plaintiff's Complaint does seek to impose liability against the City in the form of a preliminary injunction preventing it from going forward with actions it otherwise intends to take.

General Insurance goes on to allege that fraudulent joinder exists because Plaintiff's claim for injunctive relief has no real connection to his claims against General Insurance for breach of contract and bad faith. As reflected by the contents of this Response, Plaintiff's claims against General Insurance are integrally related to his claim for injunctive relief. If General Insurance had not illegally and in bad faith refused to pay the benefits owed Plaintiff under his policy of insurance, Plaintiff would be unable to obtain injunctive relief against the City. It is the common factual nexus of General Insurance's wrongdoing, and the proximate consequences of such wrongdoing, that provide the basis for Plaintiff to seek injunctive relief against the City. Plaintiff's joinder of claims against the City is not "so egregious" as to rise to the level of fraudulent joinder and this matter is due to be remanded.

**IV.    General Insurance cannot now seek to amend its Notice of Removal to claim that Removal was proper because the City is a nominal party.**

In a final attempt to avoid Plaintiff's chosen forum, General Insurance argues that even if "the City is not fraudulently joined, the City's citizenship nevertheless should be ignored because the City is a nominal party." [Opposition and Reply, p. 11-12]. This argument appears nowhere in the Notice of Removal, which is based *solely* on the contention that the City is fraudulently joined. [Notice of Removal, ¶s 5-7]. This argument, raised for the first time in Opposition to Plaintiff's Motion to Remand, is tantamount to an untimely amendment to General Insurance's Notice of Removal.

10

A defendant cannot amend its notice of removal to include new arguments as to why federal jurisdiction exists after the thirty day time period for removal expires.[8] *Fuller v. Exxon Corp.*, 131 F.Supp.2d 1323, 1327 (S.D. Ala. 2001). As explained more fully in *Fuller:*

> A defendant may freely amend the notice of removal within the thirty day period of 28 U.S.C. § 1446(b). After the thirty day period has expired however, a party may only amend defective allegations of jurisdiction pursuant to 28 U.S.C. § 1653. Section 1653 does not permit a removing party to assert additional grounds of jurisdiction not included in the original pleading. See American Educators Financial Corporation v. Bennett, 928 F.Supp. 1113, 1115 (M.D.Ala.1996); Stafford v. Mobil Oil Corp., 945 F.2d 803 (5th Cir.1991); Newman-Green, Inc. v. Alfonzo-Larrain, 490 U.S. 826, 109 S.Ct. 2218, 104 L.Ed.2d 893 (1989) (citation *1328 omitted); 14A Charles A. Wright, Arthur R. Miller & Edward H. Cooper, Federal Practice And Procedure § 3733 at 358-61 (3d ed. 1998) ( "[T]he notice may be amended only to set out more specifically the grounds for removal that already have been stated, albeit imperfectly, in the original notice ···· Completely new grounds for removal may not be added and missing allegations may not be furnished, however." (footnotes omitted)).
>
> "[T]he courts that have addressed the issue have uniformly recognized that a defendant's ability to amend the removal petition after the thirty-day time limit for removal prescribed by § 1446 extends only to amendments to correct 'technical defects' in the jurisdictional allegations in the notice of removal ····" Blakeley v. United Cable System, 105 F.Supp.2d 574, 578 (S.D.Ala.2000); see, e.g., Stein v. Sprint Communications Co., 968 F.Supp. 371, 374 (N.D.Ill.1997) ("[A] defendant may not amend its notice of removal after the 30-day limit in § 1446(b) to remedy a substantive defect in the petition"); Spillers v. Tillman, 959 F.Supp. 364, 372 (S.D.Miss.1997) ("Although a defendant is free to amend a notice of removal within the 30-day period set forth in 28 U.S.C. § 1446(b), once the 30-day period has expired, amendment is not available to cure a substantive defect in removal proceedings."); Wright v. Combined Ins. Co. of America, 959 F.Supp. 356, 359 (N.D.Miss.1997) ("If a defendant seeks to amend the notice of removal at any time thereafter, he may only do so to clarify the jurisdictional grounds for removal, which were unartfully stated in the original notice. He may not allege new jurisdictional grounds for removal."); Iwag v. Geisel Compania Maritima, 882 F.Supp. 597, 601 (S.D.Tex.1995) (finding that "[s]ection 1653 does not allow the removing party to assert additional grounds of jurisdiction not included in the original pleading," and thus holding that the court would "disallow amendments to notices of removal that present grounds for removal not included in the original notice").

---

[8] The thirty day removal deadline had run long before GICA sought to amend its removal petition by making the new argument that removal was proper because the City was a nominal party.

*Fuller*, 131 F.Supp.2d at 1327-1328; *see also Manzella v. United Parcel Services, Inc.*, 2002 WL 31040170, *9 (E.D.La. Sept. 10, 2002) (citing *Fuller*, *supra*) (citations omitted) [Attached as Exhibit C]. Therefore, General Insurance's new theory that this case is removable because the City is a nominal party is a new substantive allegation which was not raised in a timely manner and cannot be used as a basis for defeating Plaintiff's Motion to Remand.

### V.  Conclusion

Because General Insurance has failed to carry its heavy burden of establishing fraudulent joinder of the City of Tuskegee, this case is due to be remanded to the Circuit Court of Macon County.

/s J. David Martin
J. David Martin, Esq. (MAR120)
Mitchel H. Boles (BOL029)

COPELAND, FRANCO, SCREWS & GILL, P.A.
444 S. Perry Street (36104)
Post Office Box 347
Montgomery, Alabama 36101-0347
Telephone:    (334) 834-1180
Facsimile:    (334) 834-3172
Email: martin@copelandfranco.com
Email: boles@copelandfranco.com

**COUNSEL FOR PLAINTIFF -
ARCIDUS BAUMS**

## CERTIFICATE OF SERVICE

I hereby certify that on 14th day of August, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

- **Katy Smith Campbell**
  kcampbell@csspca.com ebryant@csspca.com
- **Ronald G. Davenport**
  rgd@rsjg.com cc@rsjg.com
- **LaTasha Antoinette Meadows**
  lmeadows@csspca.com tmarshall@csspca.com


/s J. David Martin
Of Counsel