# Exhibit A

**H**
Briefs and Other Related Documents
Only the Westlaw citation is currently available.
United States District Court,M.D. Alabama, Northern Division.
Mary BLOODSWORTH, et al., Plaintiffs,
v.
SMITH & NEPHEW, et al., Defendants.
**No. Civ.A. 2:05CV622-D.**

Dec. 19, 2005.

Thomas Edward Dutton, Pittman Hooks Dutton Kirby & Hellums PC, Birmingham, AL, for Plaintiff.
Alan Daniel Mathis, James C. Barton, Jr., James P. Pewitt, Lee Mcwhorter Pope, Johnston, Barton, Proctor & Powell, LLP, Birmingham, AL, for Defendants.

*MEMORANDUM OPINION AND ORDER*
DEMENT, Senior J.

### I. INTRODUCTION

**\*1** Before the court is Plaintiffs Mary and Jerry Bloodsworth's motion to remand in which Plaintiffs assert that subject matter jurisdiction is lacking in this cause which was removed from the Circuit Court of Montgomery County, Alabama.[FN1] (Doc. No. 9.) Alternatively, Plaintiffs request the court to allow limited jurisdictional discovery. (*Id.*) Defendant Smith & Nephew, Inc. ("Smith & Nephew"), the removing party, filed an opposition, contending that the court properly exercises diversity jurisdiction pursuant to 28 U.S.C. § § 1332(a)(1) and 1441(b), because the non-diverse Defendants, Spar Medical, Inc. ("Spar Medical"), and Donnie Lanier ("Lanier"), have been fraudulently joined. (Doc. No. 13.) Replies and Surreplies also have been permitted and considered by the court. (*See* Doc. No. 21.)

> [FN1.] The court refers to Plaintiffs individually as Mr. and Mrs. Bloodsworth and collectively as "Plaintiffs."

Also before the court is Smith & Nephew's motion to strike the affidavits submitted by Plaintiffs in support of their motion to remand. (Doc. No. 14.) For the reasons discussed below, the court will permit Plaintiffs to conduct jurisdictional discovery on the limited issue of whether a possibility exists that Mrs. Bloodsworth can prove a cause of action for fraud against Lanier and will hold in abeyance Plaintiffs' motion to remand until such time that the parties complete discovery. The court also will grant Smith & Nephew's motion to strike.

### II. BACKGROUND

This cause involves orthopedic hip implants which were manufactured by Smith & Nephew. (Compl. at 4 (Doc. No. 1).) On June 2, 2003, at Baptist Medical Center, in Montgomery, Alabama, Mrs. Bloodsworth "underwent a surgical procedure known as a left total hip arthroplasty," during which she was implanted with a prosthetic hip. (*Id.* at 3.) Thereafter, she experienced complications; her prosthetic hip dislocated "several" times, necessitating additional surgeries. (*Id.*) During one of the surgeries, Mrs. Bloodsworth was implanted with a "retaining lining and ring" which allegedly also failed. (*Id.*) Finally, on June 15, 2004, having suffered yet another dislocation of her prosthetic hip, she again underwent surgery, "at which time the retaining lining and ring and other components of the hip prosthesis were replaced. (*Id.* at 4.) Plaintiffs allege that "[t]he components of the hip prosthesis implanted on or about June 2, 2003, and the retaining lining and ring implanted later, were manufactured, distributed, marketed, promoted and sold by Smith & Nephew, Sp[a]r Medical, and [ ] Lanier."[FN2] (*Id.*)

> [FN2.] Hereinafter, the court refers to Mrs. Bloodsworth's prosthetic hip implants, including the retaining lining and ring, as the "products."

Plaintiffs, who are husband and wife, commenced this lawsuit on May 31, 2005, by filing a Complaint in the Circuit Court of Montgomery County, Alabama, against Smith & Nephew, Spar Medical, Lanier, and various fictitious defendants. The Complaint contains multiple causes of action, and each claim is lodged against all Defendants. Plaintiffs describe Defendants collectively as being in the business of manufacturing, distributing, marketing, promoting and selling the products at issue. (*Id.* ¶ ¶ 1-2 ("Causes of Action").) Mrs. Bloodsworth brings the following causes of action: products liability under the Alabama Extended Manufacturer's Liability Doctrine ("AEMLD"); negligence; breaches of implied warranties of merchantability and fitness; fraudulent suppression; fraudulent and/or negligent misrepresentation; and failure to warn. (*Id.* ¶ ¶ 1-9 ("Causes of Action").) Mr. Bloodsworth claims loss

Slip Copy                                                                                                           Page 2
Slip Copy, 2005 WL 3470337 (M.D.Ala.)
**(Cite as: Slip Copy)**

of his wife's consortium. (*Id.* ¶ 11.)

**\*2** Smith & Nephew is a Delaware corporation with its principal place of business in Tennessee. (Smith & Nephew Not. Removal ¶ 8 (Doc. No. 1)); *see* 28 U.S.C. § 1332(c)(1) (a corporation is deemed a citizen of any State by which it has been incorporated and of the State where it has its principal place of business). Plaintiffs, Spar Medical and Lanier are identified as Alabama citizens. (Compl. at 3 (unnumbered page).)

Although the Complaint does not specify the amount of the monetary demand, Mrs. Bloodsworth seeks compensatory damages, including damages for "physical pain and mental anguish," medical expenses, and lost wages and benefits. (*Id.* at 6-7, ¶ 10.) She also requests an award of punitive damages. (*Id.* at 7.)

Smith & Nephew timely removed this lawsuit to the United States District Court for the Middle District of Alabama on July 1, 2005, pursuant to 28 U.S.C. §§ 1332(a)(1) and 1441(b). In its notice of removal and opposition to Plaintiffs' motion to remand, Smith & Nephew asserts that the court exercises subject matter jurisdiction over this removed case through diversity of citizenship and the requisite amount in controversy. *See* 28 U.S.C. § 1332(a)(1); (Smith & Nephew Not. of Removal & Opp. to Mot. Remand (Doc. Nos.1, 13).) Smith & Nephew contends that complete diversity exists because the non-diverse Defendants were fraudulently joined to defeat federal jurisdiction.[FN3] (*Id.*)

> [FN3.] Lanier also filed a motion to dismiss, contending that all claims against him are due to be dismissed for failure to state a claim upon which relief can be granted. (Doc. No. 5.) In examining the instant motion to remand, the court has considered the arguments offered in support of the motion to dismiss, as the substantive arguments of the two motions overlap.

Urging the court to remand this case to state court, Plaintiffs dispute Smith & Nephew's assertion of fraudulent joinder. Plaintiffs contend that there exists at least one colorable claim against at least one of the two resident Defendants. Plaintiffs have not disputed that the amount-in-controversy requirement of 28 U.S.C. § 1332(a)(1) has been satisfied. (*See* Doc. No. 9.)

Opposing the motion to remand, Smith & Nephew offers two affidavits, one from Lanier and the other from the president of Spar Medical. Lanier attests that, in 2003 and 2004, he was "an orthopedic device representative" for Smith & Nephew. (Lanier Aff. ¶ 2 (Ex. 3 to Doc. No. 1).) He says that, in the performance of his job, he received orders from physicians who made the determination of the type of product to use during surgical procedures on patients. (*Id.*) Lanier then forwarded the orders to Smith & Nephew which retained the right to accept or reject an order. (*Id.*) Upon acceptance by Smith & Nephew, Lanier merely delivered the products in their original sealed packages to the physicians. Smith & Nephew, in turn, billed the medical facility, such as Baptist Medical Center, and the facility paid Smith & Nephew directly. (*Id.* ¶ 2.)

Lanier also states that he has never spoken to Mrs. Bloodsworth. He, however, neither denies nor confirms that he is the representative who received the orders from Mrs. Bloodsworth's surgeon and delivered the products at issue in this case. (*Id.* ¶ 5.) Furthermore, Lanier attests that he was "not involved in the design or manufacture of any Smith & Nephew products," had "no knowledge of any design or manufacturing defect in the Smith & Nephew products used in Ms. Bloodsworth's procedures," and did not provide any "warranties, express or implied, with respect to those products." (*Id.* ¶¶ 4-5.)

**\*3** In his affidavit, James A. Sparacio ("Sparacio"), the president of Spar Medical, attests that his company "ceased representation of Smith & Nephew, Inc., as of December 31, 2001," and "did not design, manufacture, sell, distribute, supply, handle, deliver or otherwise have anything to do with the medical devices used in each of [Mrs.] Bloodsworth's procedures performed on June 2, 2003 and February 2, 2004." (Sparacio Aff. ¶ 2 (Ex. to Doc. No. 17).) Additionally, he states that neither he nor any other employee of Spar Medical has ever communicated with Mrs. Bloodsworth or with her surgeon who performed the procedures at issue. (*Id.* ¶ 3.) Finally, he states that Spar Medical "has no knowledge of any design or manufacturing defect in the Smith & Nephew [ ] products used in Ms. Bloodsworth's procedures." (*Id.*)

### III. STANDARD OF REVIEW

Smith & Nephew, as the party removing this action to federal court, has the burden of establishing federal jurisdiction. *See Diaz v. Sheppard,* 85 F.3d 1502,

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1505 (11th Cir.1996). Federal district courts are " 'empowered to hear only those cases within the judicial power of the United States as defined by Article III of the Constitution,' and which have been entrusted to them by a jurisdictional grant authorized by Congress." Univ. of South Alabama v. The American Tobacco Co., 168 F.3d 405, 409 (11th Cir.1999) (quoting Taylor v. Appleton, 30 F.3d 1365 (11th Cir.1994)). Accordingly, the federal removal statutes must be strictly construed against removal, and, generally speaking, all doubts about removal must be resolved in favor of remand. See Shamrock Oil and Gas Corp. v. Sheets, 313 U.S. 100, 108-09, 61 S.Ct. 868, 85 L.Ed. 1214 (1941); Butler v. Polk, 592 F.2d 1293, 1296 (5th Cir.1979).

## IV. DISCUSSION

### A. *The Law of Fraudulent Joinder*

The success or failure of Plaintiffs' motion to remand is contingent upon the absence or presence of complete diversity of citizenship. A federal district court has original jurisdiction over cases involving citizens of different states where the amount in controversy exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. § 1332(a). "Diversity jurisdiction under 28 U.S.C. § 1332 requires complete diversity-every plaintiff must be diverse from every defendant." Tapscott v. MS Dealer Serv. Corp., 77 F.3d 1353, 1359 (11th Cir.1996), *abrogated on other grounds,* Cohen v. Office Depot, Inc., 204 F.3d 1069 (11th Cir.2000). Therefore, where the parties are diverse and the amount in controversy is sufficient, a defendant has the statutory right to remove an action from state to federal court. See 28 U.S.C. § § 1332(a), 1441.

The Supreme Court, however, has long recognized that diversity jurisdiction "cannot be defeated by a fraudulent joinder of a resident defendant having no real connection with the controversy." Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97, 42 S.Ct. 35, 66 L.Ed. 144 (1921). Therefore, when determining whether complete diversity exists, courts disregard the citizenship of fraudulently-joined defendants. See Tedder v. F.M.C. Corp., 590 F.2d 115, 117 (5th Cir.1979).

**\*4** There are three scenarios in which courts have concluded that a joinder is "fraudulent." Triggs v. John Crump Toyota, Inc., 154 F.3d 1284, 1287 (11th Cir.1998). "The first is when there is no possibility that the plaintiff can prove a cause of action against the resident (non-diverse) defendant. The second is when there is outright fraud in the plaintiff's pleading of jurisdictional facts." *Id.* (internal citations omitted). The third is "where a diverse defendant is joined with a nondiverse defendant as to whom there is no joint, several or alternative liability and where the claim against the diverse defendant has no real connection to the claim against the nondiverse defendant." *Id.*

In this case, Smith & Nephew argues that the joinder of Spar Medical and Lanier is fraudulent because there is no possibility that Mrs. Bloodsworth could establish a cause of action against either Spar Medical or Lanier in state court. *See id.* Smith & Nephew's burden is heavy and requires proof by clear and convincing evidence. Cabalceta v. Standard Fruit Co., 883 F.2d 1553, 1561 (11th Cir.1989); *see also* Crowe v. Coleman, 113 F.3d 1536, 1538 (11th Cir.1997) (stating that "[t]he burden of the removing party is a 'heavy one' "). The court is precluded from "weigh[ing] the merits of a plaintiff's claim beyond determining whether it is an arguable one under state law." Crowe, 113 F.3d at 1538. " 'If there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that the joinder is proper and remand the case to the state court.' " *Id.* (citation omitted). At the same time, however, the possibility of liability on the part of the allegedly fraudulently joined defendant " 'must be reasonable, not merely theoretical,' 'and, "in considering *possible* state law claims, possible must mean 'more than such a possibility that a designated residence can be hit by a meteor tonight.' " Legg v. Wyeth, 428 F.3d 1317, 1325 n. 5 (11th Cir.2005) (citations omitted).

When evaluating Smith & Nephew's contentions for removal, the court construes the facts and the controlling law in the light most favorable to Plaintiffs. See Cabalceta, 883 F.2d at 1561. The court also must base its decision on Plaintiffs' "pleadings at the time of removal; but the court [also] may consider affidavits and deposition transcripts submitted by the parties." Crowe, 113 F.3d at 1538; *see also* Legg, 428 F.3d at 1322. In other words, it is well settled that, upon allegations of fraudulent joinder, federal courts may look beyond the pleadings to determine if the joinder is a fraudulent device to prevent removal. See Cabalceta, 883 F.2d at 1561; Williams v. Atlantic Coast Line R.R. Co., 294 F.Supp. 815, 816 (S.D.Ga.1968).

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                            Page 4
Slip Copy, 2005 WL 3470337 (M.D.Ala.)
**(Cite as: Slip Copy)**

B. *Spar Medical*

Applying the foregoing legal principles, the court turns first to Plaintiffs' claims against Spar Medical.[FN4] At the time of removal, the Complaint included general averments implicating Spar Medical as one of the entities involved in the manufacture, distribution and/or sale of the alleged defective products at issue. Smith & Nephew, however, has countered the averments in the Complaint through the affidavit of Sparacio, the president of Spar Medical. Specifically, Sparacio attests that Spar Medical ceased business dealings with Smith & Nephew more than eighteen months prior to Mrs. Bloodsworth's first surgery in June 2003 and that Spar Medical was not involved in any manner with the products implanted during Mrs. Bloodsworth's surgeries. (Sparacio Aff. (Ex. to Doc. No. 17).)

> FN4. The court notes that Plaintiffs' Complaint also names as defendants fictitious parties, the identities of which are not yet known to Plaintiffs. For purposes of removal, the court does not consider the citizenship of fictitious defendants in assessing whether complete diversity of citizenship exists. *See Bullock v. United Benefit Ins.Co.,* 165 F.Supp.2d 1255, 1257 n. 1 (M.D.Ala.2001) (DeMent, J.); 28 U.S.C. § 1441(a).

**\*5** In light of Sparacio's clear and concrete attestations disavowing any association with Smith & Nephew and the products at issue, the court finds that Plaintiffs are precluded from relying on the averments in their Complaint to defeat removal. Rather, to create a question of fact in their favor as to any of Mrs. Bloodsworth's claims against Spar Medical, Plaintiffs must offer contradicting *evidence. See Legg,* 428 F.3d at 1323 (on motion to remand, "[w]hen the Defendants' affidavits are undisputed by the Plaintiffs, the court cannot then resolve the facts in the Plaintiffs' favor based solely on the unsupported allegations in the Plaintiffs' complaint.").

Plaintiffs, however, have not presented any evidence to contradict the attestations from Sparacio. The court, therefore, accepts Sparacio's undisputed statements as true. Accordingly, because the evidence establishes that Spar Medical had no involvement, directly or indirectly, with the products at issue, the court finds that there is no possibility that Mrs. Bloodsworth can prove any of her causes of action against Spar Medical. Consequently, Mr. Bloodsworth's loss of consortium claim against Spar Medical also has no possibility of surviving because his claim is derivative of Mrs. Bloodsworth's causes of action. *See, e.g., Fenley v. Rouselle Corp.,* 531 So.2d 304, 304 n. 1 (Ala.1998) (wife's loss of consortium claim was derivative of her husband's AEMLD claim); *cf. Nichols v. Wal-Mart Stores, Inc.,* No. 95-1252-CIV-T-23E, 1997 WL 33147702, \*6 (M.D.Fla. March 26, 1997) (under Florida law, "a claim for loss of consortium may only be maintained where the spouse alleging injury is entitled to recover on a separate independent claim").

In sum, the court finds that Spar Medical has been fraudulently joined. It, thus, disregards the citizenship of Spar Medical in determining whether complete diversity exists.[FN5] *See Tedder,* 590 F.2d at 117.

> FN5. Citing 28 U.S.C. § 1441(b), Smith & Nephew also contends that the court must disregard the citizenship of Spar Medical, because the company had not been "properly ... served" at the time of removal. Section 1441(b) provides that removal predicated on diversity of jurisdiction is proper only "if none of the parties in interest *properly joined and served* as defendants is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b) (emphasis added). The court disagrees with Smith & Nephew's interpretation of § 1441(b). Section 1441(b) does not broaden removal jurisdiction or alter the *Pullman* rule that the citizenship of all defendants, whether served with process or not, must be considered when determining whether complete diversity exists in a removed lawsuit. *See Pecherski v. General Motors Corp.,* 646 F.2d 1156, 1160-61 (8th Cir.1981) (citing *Pullman Co. v. Jenkins,* 305 U.S. 534, 541, 59 S.Ct. 347, 83 L.Ed. 334 (1939)). The *Pullman* holding "applies in determining whether there is complete diversity, [while] § 1441(b) ... relates to removability rather than the broader issue of whether diversity exists[.]" *Ott v. Consolidated Freightways Corp. of Delaware,* 213 F.Supp.2d 662, 665 (S.D.Miss.2002); *see also Everett v. MTD Products, Inc.,* 947 F.Supp. 441, 443-44 (N.D.Ala.1996).

C. *Lanier*

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The court carefully has studied the briefs submitted by Smith & Nephew and Plaintiffs, the opinions cited in those briefs, and the admissible evidence submitted in support of and in opposition to the motion to remand. As a result, the court is informed as to the legal requirements of each of Mrs. Bloodsworth's causes of action and the opposing positions of the parties as to whether a possibility exists that a state court would find at least one viable claim against Lanier.

### 1. AEMLD

After careful consideration, the court agrees with Smith & Nephew that there is no possibility that Mrs. Bloodsworth could establish a claim against Lanier in state court for a violation of the AEMLD. A defendant is liable under the AEMLD if the plaintiff shows the following:
(1) [that] he suffered injury or damages to himself ... by one who sold a product in a defective condition unreasonably dangerous to the plaintiff as the ultimate user or consumer, if (a) the seller is engaged in the business of selling such a product, and (b) it is expected to, and did, reach the user or consumer without substantial change in the condition in which it was sold.

**\*6** *Atkins v. American Motors Corp.,* 335 So.2d 134, 141 (Ala.1976).

Smith & Nephew asserts that Lanier, as its sales representative (a fact which is clearly established by Lanier's affidavit and not refuted by Plaintiffs), is not deemed a "seller" within the meaning of the AEMLD. For the reasons to follow, the court agrees.

The parties have not cited, and the court is unaware of, any published opinion from an Alabama court addressing liability under the AEMLD of a product sales representative. Other courts, however, as pointed out by Smith & Nephew, have examined Alabama law and applied it so as to preclude AEMLD liability against sales representatives. In the removed case of In re *Rezulin Products Liability Litigation,* the court studied Alabama law to determine whether a sales representative for a pharmaceutical company had been fraudulently joined. *See* 133 F.Supp.2d 272, 287-88 (S.D.N.Y.2001). The court observed that holding a sales representative liable under the AEMLD would contravene the doctrine's scope and purpose. *See id. at 288.* "The AEMLD is founded on 'broader moral notions of consumer protection and on economic and social grounds, placing the burden to compensate for loss incurred by defective products on the one best able to prevent the distribution of these products." ' *Id.* at 287 (quoting *Atkins,* 335 So.2d at 139). It concluded that the sales representative was merely an agent of the manufacturer/seller, and, as a "corporate employee," he was not " 'the one best able' to prevent sales of defective drugs." *Id.* at 288. The court, therefore, found that there was "no reasonable basis for supposing that [an Alabama court] would impose liability on the sales representative." *Id.*

Moreover, in an unpublished opinion cited by Smith & Nephew, the Multi-District Litigation Court in In re *Baycol Products Liability Litigation,* M.D.L. No. 1431, \*4-\*7 (D.Minn. March 26, 2004), reached the same conclusion. (*See* Ex. attached to Doc. No. 13.) Examining Alabama law, the *Baycol* court found that the purpose of the AEMLD did not support a claim against a sales agent who " 'had no authority to compel or prevent the distribution of particular products." ' *Id.* at \*4 (citing *Atkins,* 335 So.2d at 139, among other opinions); *see also Rutledge v. Arrow Aluminum Indus., Inc.,* 733 So.2d 412, 417 (Ala.Civ.App.1998) (holding that builder who hired subcontractor to install door was "not in the business of selling sliding glass doors," and, thus, was not the "seller" of door for purposes of establishing a violation of the AEMLD).

The court finds the reasoning in *Rezulin* and *Baycol* persuasive and applicable in this case. There is no evidence that Lanier, in his capacity as a sales representative, had any significant control over the distribution of Smith & Nephew's products or could have prevented, in any substantial way, Smith & Nephew's dispersion of its products.

**\*7** Furthermore, the court observes that the Supreme Court of Alabama has rejected the theory that a retailer who lacks knowledge of a product's dangerous defect can be liable under the AEMLD simply for "the mere selling of a defective product." *Atkins,* 335 So.2d at 139. By analogy, Lanier has attested that he merely received orders and delivered Smith & Nephew's products, in their original sealed packages, to physicians, and had no knowledge of any design or manufacturing defect in the Smith & Nephew products used in Mrs. Bloodsworth's procedures. (Lanier Aff. ¶ 4.) In sum, based on the foregoing, the court finds that the parameters of Alabama law are sufficiently clear so as to establish that there is no "reasonable possibility" for concluding that, under the facts presented, an

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Alabama court would find Lanier liable under the AEMLD. *Legg,* 428 F.3d at 1324.

### 2. *Claims for breaches of implied warranties and negligence*

Although once questionable, it is now clearly established that warranty and negligence claims are not subsumed by the AEMLD. *See Tillman v. R.J. Reynolds Tobacco Co.,* 871 So.2d 28, 34-35 (Ala.2003). Nonetheless, for a different reason, the court finds that neither claim presents the possibility of recovery given the facts and evidence presented.

Mrs. Bloodsworth's warranty claims against Lanier fail for the same reason that the AEMLD claim fails, as a breach of warranty claim is viable only against the "seller" of the goods. *See* Ala.Code § § 7-2-313(1), 7-2-314(1) & 7-2-315(1) (2002) (express and implied warranty claims refer to the creation of warranties by the "seller"). Lanier is not considered to be the "seller" of the alleged defective products for purposes of the breach of warranty claims; instead, the manufacturer (i.e., Smith & Nephew) is deemed the seller and Lanier is deemed its "agent." In re *Baycol Prods. Liab. Litig.,* M.D.L. No. 1431, *7 (on fraudulent joinder analysis, finding that under Alabama law sales representatives could not be liable for claims of breach of express or implied warranty because they were neither manufacturers nor sellers of Baycol, but rather were merely "agents" of the seller of Baycol); *see also Rutledge,* 733 So.2d at 417 (holding that builder who hired subcontractor to install door was not the "seller" of door for purposes of establishing a claim for breach of implied warranty of fitness). Similarly, a claim for negligent manufacture or sale is cognizable against the manufacturer or seller, and Lanier again is deemed neither under Alabama law. *See* In re *Baycol Products Liability Litigation,* M.D.L. No. 1431, *6-*7. Accordingly, the court finds that Mrs. Bloodsworth's breach of warranty and negligence claims against Lanier fail under the fraudulent joinder analysis.

### 3. *Failure to Warn*

Additionally, the court finds that no reasonable basis exists under Alabama law to support a failure-to-warn claim against Lanier, whether the claim is predicated on allegations of negligence or wantonness. (*See* Compl. ¶ 8.) Pursuant to the learned intermediary doctrine, which has been adopted by the Supreme Court of Alabama, any duty to warn is owed by Smith & Nephew to the surgeon who performed Mrs. Bloodsworth's procedures at issue; the duty is not owed by Lanier. *See Morguson v. Baxter Healthcare Corp.,* 857 So.2d 796 (Ala.2003) (extending application of learned intermediary doctrine to medical devices); *cf. Catlett v. Wyeth, Inc.,* 379 F.Supp.2d 1374, 1381 (M.D.Ga.2004) (finding pursuant to Georgia law, "no basis for a claim against a sales representative under the learned intermediary doctrine ... [; a]lthough the manufacturers employ the sales representatives to be one source of that information, the manufacturers are the ones who are ultimately responsible and thus liable ... for any alleged failure to provide information related to prescription drugs").

### 4. *Fraud*

**\*8** The claims remaining are those for fraudulent suppression, fraudulent misrepresentation and negligent misrepresentation against Lanier, and these are the claims upon which Plaintiffs devote the majority of their discussion in urging a remand. Under Alabama law, to succeed on a fraudulent suppression claim, a plaintiff must show:
"(1) that the defendant had a duty to disclose an existing material fact; (2) that the defendant suppressed that existing material fact; (3) that the defendant had actual knowledge of the fact; (4) that the defendant's suppression of the fact induced the plaintiff to act or to refrain from acting; and (5) that the plaintiff suffered actual damage as a proximate result."

*Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 875 So.2d 1143, 1161 (Ala.2003) (quoting *State Farm Fire & Cas. Co. v. Slade,* 747 So.2d 293, 323-24 (Ala.1999)). A claim of fraudulent misrepresentation comprises the following elements: " '(1) a false representation (2) concerning a material existing fact (3) [reasonably] relied upon by the plaintiff (4) who was damaged as a proximate result." ' *Fisher v. Comer Plantation,* 772 So.2d 455, 463 (Ala.2000) (quoting *Baker v. Bennett,* 603 So.2d 928, 935 (Ala.1992)).

Moreover, in *Legg, supra,* applying Alabama law, the Eleventh Circuit held that, absence a demonstration of bad faith, a negligent misrepresentation claim is untenable against a pharmaceutical sales representative. *See* 428 F.3d at 1324. The court explained that a sales representative is merely a channel through which the corporate entity acts: "

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

'[T]hose who are only conduits through which faulty information is supplied by one person to a third person cannot be held liable for fraud unless they acted in bad faith." ' *Id.* (quoting *Fisher,* 772 So.2d at 455). A misrepresentation claim predicated on an allegation that a sales representative "innocently passed on incorrect information" about a manufacturer's product simply is not cognizable under Alabama law. *Id.*

Keeping in mind the foregoing elements of Plaintiffs' fraud claims, the court addresses four threshold issues presented by the parties in support of and in opposition to the motion to remand. Namely, below, the court examines Smith & Nephew's motion to strike, the sufficiency of the attestations in Lanier's affidavit as relate to the fraud claims, the adequacy of the Complaint's factual averments of fraud in light of the heightened pleadings requirements, and the propriety of allowing jurisdictional discovery.

(a) Smith & Nephew's Motion to Strike Plaintiffs' Affidavits

In support of their motion to remand, Plaintiffs have submitted affidavits which they contend establish that Lanier has not been fraudulently joined in this lawsuit as to the fraud claims. Smith & Nephew objects to the affidavits, in part, on the ground that the affidavits are based largely on hearsay, and, therefore, should be stricken. (Smith & Nephew Opp. to Mot. Remand at 2 n. 2 & 12-13 (Doc. No. 13)); (Smith & Nephew Mot. to Strike (Doc. No. 14).) Smith & Nephew's motion to strike is well taken.

*\*9* Plaintiffs, in separate affidavits, attest that Mrs. Bloodsworth's surgeon told them that Mrs. Bloodsworth's 2004 surgery had to be postponed because certain of the Smith & Nephew product components were not in "production" and had to be "special[ly] ordered." (Mrs. Bloodsworth Aff. at 2; Mr. Bloodsworth Aff. at 2 (Exs. B, C to Doc. No. 9).) Furthermore, Plaintiffs state that the surgeon told them that, if he had been informed by the sales representative that "all of the pieces he would need were not in production," the surgeon "would have never put the Smith & Nephew prosthesis in [her] hip." (Mrs. Bloodsworth Aff. at 2; Mr. Bloodsworth Aff. at 2.)

The court discerns based on these affidavits that Mrs. Bloodsworth is averring that her fraud claims against Lanier are predicated on facts that Lanier conferred with Mrs. Bloodsworth's surgeon and made material misrepresentations and/or omissions regarding the future availability of the component parts of the prosthetic hip. Furthermore, it appears that Mrs. Bloodsworth is contending that these representations and/or omissions affected the surgeon's selection of the products he implanted in Mrs. Bloodsworth and that Mrs. Bloodsworth was damaged because she relied to her detriment on her surgeon's selection. (*See* Pls. Mot. Remand ¶ 27 (Doc. No. 9).)

The court, however, need not ascertain whether a "possibility" exists that a state court would find that these facts state a cause of action for fraud, *Crowe,* 113 F.3d at 1538, because the attempt by Plaintiffs to offer the statements through their own attestations, rather than through the surgeon, creates a layer of inadmissible hearsay. The court cannot consider hearsay in ruling on the fraudulent joinder issue. *Cf. Macuba v. Deboer,* 193 F.3d 1316, 1322-254 (11th Cir.1999) (holding that district court erred in considering on summary judgment testimony of a deponent who heard other individuals make statements which bolstered plaintiff's claims because the statements were "rank hearsay"). Accordingly, the court finds that Smith & Nephew's motion to strike is due to be granted; therefore, the court has not considered the hearsay portions of the affidavits in ruling on the viability of the fraud claims.[FN6]

> [FN6]. The court notes that, even if the foregoing attestations had been offered through the affidavit of the surgeon, another problem lies in the fact, as discussed below, that Plaintiffs have not pleaded with the requisite specificity the factual basis of their fraud claims. If the "dangers" of the products, as alleged in the Complaint (Compl.¶ 7), arise from the alleged fact that the component parts of the hip prosthesis were not immediately available upon request, rather than on a design or manufacturing defect, that factual basis is not apparent on the face of the Complaint.

(b) Lanier's Affidavit, Heightened Pleading and Jurisdictional Discovery

Smith & Nephew contends that the fraud claims are not viable for failure of Plaintiffs to satisfy the heightened pleading requirements applicable to fraud claims and for the failure of Plaintiffs to submit evidence which defeats the averments in Lanier's affidavit. (Smith & Nephew Opp. to Mot. Remand at 10-14.) Plaintiffs, on the other hand, contend that the

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                           Page 8
Slip Copy, 2005 WL 3470337 (M.D.Ala.)
**(Cite as: Slip Copy)**

failure to plead a fraud claim with particularity does not preclude remand because a post-remand amendment to the complaint can cure any pleading defect. (Pls. Mot. Remand (Doc. No. 9).) Alternatively, Plaintiffs state that, "if this Court is not presently convinced that a remand is warranted based on the arguments contained herein," they urge the court to permit them to conduct limited discovery, in particular to be allowed to "depos[e] Donnie Lanier regarding the statements made in his affidavit." (Pls. Mot. Remand ¶ 21 (Doc. No. 9).) Plaintiffs contend that Lanier's attestations are "very general" in nature and point out that Lanier has not been subject to cross-examination. (*Id.* ¶ 23.) For the reasons to follow, the court does not agree in full with either party's position, but finds that the best course of action is to give Plaintiffs an opportunity to conduct limited jurisdictional discovery and to file a statement which complies with the heightened pleading requirements prior to the court examining whether substantively there exists a viable fraud claim.

**\*10** The parties' arguments present competing considerations. As to the fraud claims, a question arises as to whether Lanier's affidavit constitutes sufficient evidence to overcome the presumption against removal, *see Russell Corp. v. American Home Assurance Co.,* 264 F.3d 1040, 1050 (11th Cir.2001), and to satisfy Smith & Nephew's heavy burden of demonstrating fraudulent joinder by clear and convincing evidence. See *Cabalceta,* 883 F.2d at 1561; *see, e.g., Allen v. R & H Oil & Gas Co.,* 63 F.3d 1326, 1335 (5th Cir.1995) ( "Removal ... cannot be based simply upon conclusory allegations ... *under any manner of proof ....* " ) (emphasis added).

In the affidavit filed by Lanier, Lanier has not discussed his personal involvement concerning the sale of the products at issue and his interaction with Mrs. Bloodsworth's surgeon. Indeed, Lanier has avoided answering whether he is the representative who was involved in the sale of the Smith & Nephew products at issue, notwithstanding that Plaintiffs have alleged in various sections of their Complaint, *albeit* not with detail, that Lanier sold the products to Mrs. Bloodsworth's surgeon. (*See, e.g.,* Compl. ¶ ¶ 3, 5 ("Causes of Action").) Because Lanier's affidavit does not contradict these allegations in the Complaint in the latter regard, the court disagrees with Smith & Nephew that it has established the absence of personal participation on the part of Lanier. (*See* Not. of Removal ¶ 8 (Doc. No. 1)); (*see also* Lanier Mot. Dismiss ¶ 9 (Doc. No. 5).) The facts of this case, thus, are distinguishable from those in In re *Rezulin Products Liability Litigation, supra,* relied upon by Smith & Nephew, where the court found no possibility of a viable fraud claim under Alabama law because there was nothing in the complaint indicating that the sales representative was the one involved in the sale of Rezulin "to plaintiff's decedent or to plaintiff's decedent's physician[.]" 133 F.Supp.2d at 286-87 (applying Alabama law); *see also Legg,* 428 F.3d at 1321, 1323 (sales representative attested that he had never sold, promoted or distributed the drug at issue).

Moreover, Lanier's affidavit is silent as to the nature and extent of Lanier's statements to and communications with Mrs. Bloodsworth's surgeon concerning the products at issue. Although Lanier has denied knowledge of a manufacturing defect in the products at issue, his denial does not necessarily negate the possibility that there were other statements, knowingly and falsely made or omitted, unrelated to a manufacturing or design defect, which would constitute fraud. Overall, the court questions whether Lanier's attestations provide a sufficiently concrete basis for the court to find no possibility of a viable fraud claim against Lanier.

On the other hand, Plaintiffs have a burden to plead their fraud claims with particularity. Smith & Nephew asserts that Plaintiffs failed to carry their burden to plead the fraud claims with particularity and that their failure to do so supports a finding of fraudulent joinder as to Lanier. Whether analyzing Plaintiffs' fraud claims under Rule 9(b) of the Federal Rules of Civil Procedure or Alabama's counterpart rule, *see Mays v. United Insurance Co. of America,* 853 F.Supp. 1386, 1389 n. 2 (M.D.Ala.1994), the court agrees with Smith & Nephew that Mrs. Bloodsworth's averments in ¶ ¶ 6-7 of the Complaint do not comport with the heightened pleading requirements applicable to fraud claims. Mrs. Bloodsworth has alleged in general terms that Lanier "suppressed material facts ... [and] failed to adequately advise consumers (including Mrs. Bloodsworth's surgeon) that this product could cause injury to individuals in whom it could be ... implanted" and "willfully, recklessly or negligently misrepresented the dangers of using th[e] product[s]" at issue. (Compl. at 6, ¶ ¶ 6-7.) Mrs. Bloodsworth has not alleged "precisely" what misstatements were made and what facts were omitted by Lanier; she has not identified the time or the place of such statements or omissions; and she has not set forth the manner in which she claims she was misled. *Ziemba v. Cascade Int'l, Inc.,* 256 F.3d 1194, 1202 (11th Cir.2001) (setting forth requirements for surviving a Rule 9(b) challenge); *Durham v. Bus. Mgmt. Assoc.,* 847 F.2d

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

1505, 1512 (11th Cir.1988) (stating that "[a]llegations of date, time or place satisfy the Rule 9(b) requirement that the *circumstances* of the alleged fraud must be pleaded with particularity") (emphasis in original). Plaintiffs' failure to allege Mrs. Bloodsworth's fraud claims with particularity no doubt has frustrated the efforts of Smith & Nephew to combat the allegations of fraud in arguing that Lanier's joinder is fraudulent.

**\*11** Smith & Nephew's position that Plaintiffs cannot defeat removal by relying on allegations which fail to satisfy the heightened pleading requirements for fraud claims finds some support in *In re Rezulin Products Liability Litigation, supra. See* 133 F.Supp.2d at 284-85. In that case, however, the evidence submitted by the defendants clearly established an absence of personal participation by the sales representatives in the alleged fraud. *See id. at 281.* That is not the case here. As discussed above, there is some indication that Lanier personally was involved in the sale of the products to Mrs. Bloodsworth's surgeon.

While the court agrees with Smith & Nephew that the Complaint's allegations are deficient to satisfy the heightened pleading requirements applicable where fraud claims are alleged, the court is not persuaded that, on the present record, Plaintiffs' pleading deficiencies automatically warrant a finding of fraudulent joinder. On the other hand, the court does not agree with Plaintiffs that the state court, after remand, is the forum which should evaluate whether Plaintiffs can remedy the deficiencies. The court finds that, in this case, the better course is to give Plaintiffs an opportunity to cure the pleading deficiencies, through the submission of a supplemental statement, at which time the court will assess whether Lanier has been fraudulently joined on the fraud claims.[FN7] *See Duffin v. Honeywell Intern., Inc.,* 312 F.Supp.2d 869, 870 (N.D.Miss.2004) (observing "that a plaintiff should ordinarily be given an opportunity to amend her complaint to allege fraud with greater particularity, before such claims are dismissed with prejudice upon a finding of fraudulent joinder") (citing *Hart v. Bayer Corp.,* 199 F.3d 239, 248 n. 6 (5th Cir.2000)).

> FN7. Although Smith & Nephew objects to the court's consideration of any post-removal averments provided by Plaintiffs, the court observes that post-removal amendments submitted for purposes of clarification have been considered by courts in resolving a motion to remand. *See Davis v. General Motors Corp.,* 353 F.Supp.2d at 1207-08 (M.D.Ala.2005) (Fuller, Chief J.) (permitting plaintiffs to amend their complaint to clarify their claims against resident defendant; finding that "[i]n granting Plaintiffs' motion to amend their Complaint, complete diversity-arguably, to the extent it did not exist before-is now destroyed[.]"); *Brooks v. Pre-Paid Legal Servs., Inc.,* 153 F.Supp.2d 1299, 1302 (M.D.Ala.2001) (DeMent, J.) (where complaint contained unspecified amount of damages, plaintiff's affidavit clarified amount of damages sought in complaint).

The court also finds that these facts present an atypical scenario in that Plaintiffs were not the recipients of the alleged fraudulent statements and omissions; therefore, they did not witness what, if anything, occurred between Lanier and Mrs. Bloodsworth's surgeon concerning the sale of the products at issue. The court, thus, concludes that Plaintiffs should be given the opportunity to depose Lanier in order to flesh out their fraud claims. In short, the court agrees with Plaintiffs that jurisdictional discovery as to whether Lanier has been fraudulently joined is appropriate under these facts.

Although Smith & Nephew has not responded directly to Plaintiffs' request for jurisdictional discovery, it suggests that permitting jurisdictional discovery would be futile for at least two reasons. First, Smith & Nephew contends that the fraudulent joinder of Lanier is evidenced through the undisputed fact that Lanier did not make any representation or omission to Mrs. Bloodsworth, at best only to her surgeon. (Doc. No. 13 at 13 n. 4.) Smith & Nephew is correct that the general rule under Alabama law is that an actionable misrepresentation or suppression claim requires that the "hearer" of the misstatement and the one injured be one and the same individual. *See Thomas v. Halstead,* 605 So.2d 1181, 1184 (Ala.1992). It, however, "is not always necessary to prove that a misrepresentation was made directly to the person who claims to have been injured." *Id.* There are exceptions to the general rule: " 'If a third person is injured by the deceit, he may recover against the one who made possible the damages to him by practicing the deceit in the first place.' " *Id.* (citation omitted); *see generally* Michael L. Roberts and Gregory S. Cusimano, Alabama Tort Law § 20.8 (4th ed.2004) (collecting cases). In other words, " '[t]here is a duty not to make a false representation to those to whom a defendant intends, for his own

purposes, to reach and influence by the representation." ' *Wheelan v. Sessions,* 50 F.Supp.2d 1168, 1174 (M.D.Ala.1999) (DeMent, J.) (quoting *Colonial Bank of Ala. v. Ridley & Schweigert,* 551 So.2d 390, 396 (Ala.1989)).

**\*12** Finding the exception in *Thomas, supra,* applicable, the court in *Brasher v. Sandoz Pharmaceuticals Corp.,* denied summary judgment on plaintiffs' fraud claim alleging that a drug manufacturer made misrepresentations about a drug to the plaintiffs' doctor. *See* 2001 U.S. Dist. Lexis 18364, at \*31-\*33 (N.D.Ala. Sept. 21, 2001). It was undisputed that the plaintiffs were not the direct recipients of the alleged misrepresentation. (*Id.*) The court, however, found that the plaintiffs clearly were the parties who were injured by the alleged fraud. It also was clear that the drug manufacturer "for its own purposes of promoting its product and making a profit, intended to reach and influence the patients of obstetricians, such as the plaintiffs." *Id.* at \*32-\*33; *cf. Johnson v. Parke-Davis,* 114 F.Supp.2d 522, 525 (S.D.Miss.2000) (finding sales representatives fraudulently joined on fraud claims because there was no evidence or argument by plaintiffs that they were the " 'hearer' " of any of the sales representative's alleged misrepresentations or that the sales representative made *"any representations ... to any of the Plaintiffs' physicians"* ) (emphasis added). Based on the foregoing principles, the court cannot find, as Smith & Nephew urges, that a state court would find no possibility of a viable fraud claim on the ground that Lanier did not make any statements directly to Mrs. Bloodsworth.

Second, Smith & Nephew contends that, pursuant to the learned intermediary doctrine, Plaintiffs cannot establish the fraud element of duty, namely that "a sales representative like Lanier had a duty to disclose information about a medical device to them or their physician." (Smith & Nephew Opp. to Mot. Remand (Doc. No. 13 at 14).) The court is inclined to agree with Smith & Nephew if the gravamen of Mrs. Bloodsworth's fraud claims is based solely upon a failure to warn theory. *See* In re *Diet Drugs,* 220 F.Supp.2d 414, 424-25 & n. 10 (E.D.Pa.2002). At present, however, the failure of Plaintiffs to plead their fraud claims with any particularity precludes the court from assessing whether this is Mrs. Bloodsworth's theory or whether Mrs. Bloodsworth is contending that Lanier made other false representations and/or omissions to the detriment of Mrs. Bloodsworth.

V. CONCLUSION

In sum, having pierced the pleadings, the court finds that Spar Medical has been fraudulently joined, and, therefore, the court disregards its citizenship in assessing whether complete diversity exists in this case. The court also finds that no possibility exists that Mrs. Bloodsworth can prevail on a claim against Lanier for violations of the AEMLD, for negligence, wantonness and/or recklessness, for breach of implied warranties, or for failure to warn. The viability of the fraud claims at present remains unclear. Smith & Nephew's evidence is not sufficiently specific, thus, precluding the court from relying on it to find that Lanier is fraudulently joined as to the fraud claims. At the same time, the fraud averments in the Complaint are deficient under the heightened pleading requirements, also preventing the court from ascertaining whether those facts present the possibility that a state court would find a fraud claim viable. Given these competing deficiencies, the court will allow Plaintiffs leave to conduct limited discovery to depose Lanier and will permit Plaintiffs leave to file a statement alleging with particularity the averments of fraud. The court will hold in abeyance Plaintiffs' motion to remand.

VI. ORDER

**\*13** Accordingly, as set forth herein, it is CONSIDERED and ORDERED that Plaintiffs are permitted until January 18, 2006(1) to depose Donnie Lanier with the restriction that the deposition shall be limited to the jurisdictional issues raised by the removal and the motion to remand concerning the fraud claims, (2) to file a statement setting forth with particularity the fraud claims, and (3) to file a supplemental brief.

It is further CONSIDERED and ORDERED that Smith & Nephew may file a response, if desired, on or before January 31, 2006, at which time the remaining issues presented by the motion to remand will be taken under submission for determination without oral argument.

It is further CONSIDERED and ORDERED that Plaintiffs' motion to remand is hereby held in abeyance until such time that limited jurisdictional discovery is completed and the court resolves the issue of whether a possibility exists that Mrs. Bloodsworth can prove a claim for fraud against Defendant Donnie Lanier.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

Slip Copy                                                                                                                  Page 11
Slip Copy, 2005 WL 3470337 (M.D.Ala.)
**(Cite as: Slip Copy)**

It is further CONSIDERED and ORDERED that Smith & Nephew's motion to strike (Doc. No. 14) be and the same is hereby GRANTED.

M.D.Ala.,2005.
Bloodsworth v. Smith & Nephew
Slip Copy, 2005 WL 3470337 (M.D.Ala.)

Briefs and Other Related Documents (Back to top)

• 2006 WL 823379 (Trial Motion, Memorandum and Affidavit) Defendants' Supplemental Brief in Opposition to Plaintiffs' Motion to Remand (Feb. 10, 2006) Original Image of this Document (PDF)
• 2005 WL 2674844 (Trial Motion, Memorandum and Affidavit) Smith & Nephew's Opposition to Plaintiffs' Motion to Remand (Aug. 15, 2005) Original Image of this Document (PDF)
• 2005 WL 2303094 (Trial Motion, Memorandum and Affidavit) Motion to Remand (Jul. 29, 2005) Original Image of this Document (PDF)
• 2:05cv00622 (Docket) (Jul. 1, 2005)
• 2005 WL 1925700 (Trial Pleading) Answer of Defendant Smith & Nephew, Inc. (2005) Original Image of this Document (PDF)

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.