SAFECO SELECT INSURANCE SERVICES, INC. CLAIM SERVICE AGREEMENT

AGREEMENT NO.

PROGRAM NO.

THIS AGREEMENT, made as of the _1_ day of ~~February~~ September, 20~~02~~ 01 PLD between CRAWFORD & COMPANY, a corporation of the State of Georgia ("Service Company") and SAFECO Select Insurance Services, Inc., a corporation of the State of California,  ("Client").

### WITNESSETH:

WHEREAS, Service Company is engaged in the business of providing certain services with respect to the investigation and adjusting of property and casualty claims; and

WHEREAS, Client desires to retain Service Company for the provision of its services for Client's claims and  and Service Company is willing to provide such services, on the terms and conditions set forth in this contract;

NOW THEREFORE, in consideration of the premises hereof, the mutual promises and agreements contained herein, and the payments to be made to Service Company for services rendered to Client hereunder, the parties hereto, intending to be legally bound, hereby agree as follows:

### ARTICLE I

### TERM

Service Company agrees to provide all services set forth herein to Client in connection with any claims Client assigns to Service Company during the period commencing ~~February~~ 1 20~~02~~ and ending through ~~January~~ 31 20~~02~~, unless earlier terminated as set forth herein. ~~August~~ September 01 PLD

### ARTICLE II

### PRICE

See Exhibit A, attached hereto and made a part hereof.

Fees shall be paid by Client in accordance with the terms of Exhibit A, with the exception of claim files identified by Client as unique in nature and requiring a time and expense billing.

All fees and expenses unless otherwise stated herein shall be in accordance with Service Company's Standard Billing Policies (U.S.) which are attached hereto and incorporated by reference.

### ARTICLE III

### SERVICE COMPANY

Service Company agrees as follows:

1. To provide Client with "Basic Services" (as defined below in paragraph 2) in accordance with the standards set forth in EXHIBITS B and C with respect to any claim referred to Service Company by Client (including claims that have been handled by a prior claims service provider) during the term of this Agreement


EXHIBIT
2

("Claims")

2. "Basic Services" shall include the following:

A.    To establish a file with respect to each Claim.

B.    To investigate each Claim and to recommend the amount of loss reserve to be established with respect to each such Claim.

C.    To provide each Claim file with a written chronology of all activity with respect to the underlying Claim in accordance with the standards set forth in EXHIBITS B and C and any other claim handling reference guidelines provided by Client.

D.    To furnish all claims forms necessary for proper claims administration.

E.    To reserve and pay Claims within Service Company's "Authority Limit" as set forth in EXHIBIT D..

F.    For any Claims in excess of the "Authority Limit," to reserve and pay such claims only with prior approval of Client.

3. To Client's right to assume the control and handling of any Claim at any time, and Service Company agrees to deliver promptly any Claim file to Client which it may request, but without any off-set or deduction from any of the fees or charges paid or payable by Client to Service Company under Article V below. The parties agree that at all times prior to and after the cancellation of this Agreement all Claim files are owned by and are the property solely of Client. Claim files are subject to review by Client and its employees and authorized agents during Service Company's regular business hours, with reasonable prior notice.

4. To manage the services provided hereunder in such a way and in such manner as to ensure that every adjuster, claims investigator, appraiser and/or employee of by the Service Company or subcontracted by the Service Company will adjust or investigate every Claim or matter covered by this Agreement in accordance with applicable legal and regulatory responsibilities in connection with the adjustment of claims as well as in accordance with the terms and conditions of this Agreement.

5. To procure and maintain at its sole cost and expense all insurance coverage required by applicable law and by customary business practices for all performance of the services hereunder. At a minimum, such coverage shall include:

(a)    workers' compensation insurance at statutory limits;

(b)    commercial general liability insurance on an occurrence basis with limits of not less than $1 million each occurrence and $3 million general aggregate; and

(c)    professional liability insurance with limits of not less than $1 million per incident and $3 million in the aggregate. If the professional liability insurance is purchased on a claims-made basis, coverage must be maintained for the duration of the Agreement plus five years. If existing coverage is terminated before this requirement is met, an extended reporting period to satisfy this obligation shall be obtained.

**Client shall be named as an additional insured with respect to the insurance coverage described above except workers' compensation and professional liability. The company or companies writing any insurance which Service Company is required to maintain under this Agreement shall have an A.M. Best**

rating of A VI or better, according to the current edition of Best's Key Rating Guide. On or prior to the effective date of this Agreement, Service Company shall provide to Client a certificate of insurance for each and every policy required by this Section. In addition, Service Company shall provide to Client, no later than thirty (30) days prior to the expiration of such insurance policies, certificates of insurance evidencing that the coverages required hereunder will be continued, renewed or replaced. Each such policy shall contain a provision that the insurer will give to Client at least thirty (30) days prior written notice of cancellation, and ten (10) days prior written notice of cancellation for nonpayment of premium.

6. To indemnify, defend and hold Client and Client's, directors, officers, attorneys, employees, agents and other representatives, wholly harmless from and against any and all damage, loss, costs and expenses whatsoever (including, without limitation, attorneys' fees and litigation expenses) incurred by Client or by any of Client's directors, officers, attorneys, employees, agents or other representatives, by reason of any negligent or otherwise tortious act or omission of Service Company or of Service Company's directors, officers, attorneys, employees, agents, subcontractors or other representatives, taken or omitted to be taken pursuant to this Agreement,. However, Service Company shall have no obligation to indemnify anyone pursuant hereto with respect to any act or omission of Service Company or any of Service Company's directors, officers, attorneys, employees, agents or other representatives taken or omitted to be taken at the express and specific direction of Client or any of Client's directors, officers, attorneys, employees, agents or other representatives. In the event Client or any of its directors, officers, attorneys, employees, agents or other representatives, is named as a defendant in any legal action or proceeding in which a Claim indemnified hereunder is asserted, Service Company will assume, at Service Company's expense, the defense of such action on behalf of Client and its directors, officers, attorneys, employees, agents and other representatives, as the case may be. Service Company has sole discretion to select the attorneys who will defend any such action, provided, however, that Service Company shall exercise such discretion reasonably. This indemnity shall survive termination of this Agreement.

7. To exercise reasonable care in the selection of any employees and adjusting company, adjuster, claims investigator or appraiser it subcontracts its responsibilities hereunder, and to ascertain that such subcontractors (a) hold proper licenses for the work to be performed; (b) are residents in those states requiring residency; and (c) perform services in a professional and workmanlike manner in accordance with legal regulations and standards set forth in this Agreement.

8. To retain and maintain any and all files and documentation pertaining to claims referred by Client for a period of two years, at which point Service Company shall transfer such documents to Client.

9. To allow Client to audit any and all of Service Company's files and documentation pertaining to the claims referred by Client, including on-site review, provided Client gives reasonable advance notice of such audit.

ARTICLE IV

ALLOCATED LOSS ADJUSTMENT EXPENSE

1. The term "Allocated Loss Adjustment Expense" shall mean the following items of expense incurred or authorized by Service Company as may be reasonable and necessary in connection with the provision of Basic Services:

| | |
|---|---|
| A. | Attorneys' fees and disbursements. |
| B. | Court reporter services and transcripts. |
| C. | Stenographic services and transcripts. |
| D. | Witness attendance fees. |
| E. | Court costs. |

3

F.    Appeal bonds.
G.    Printing costs related to trials and appeals.
H.    Testimony, opinions, appraisals, reports, surveys and analyses of professionals and experts.
I.    Trial and hearing attendance fees.
J.    Reports from government agencies or branches.
K.    Credit bureau reports.
L.    Private investigators.
M.    Extraordinary Claim investigation and/or travel expense incurred at the request of Client.
N.    Any similar service related to the investigation and defense of a particular Claim, or the protection of and collection of the subrogation rights of Client, for which Client shall have given prior approval.

2. Client agrees to pay Allocated Loss Adjustment Expenses in addition to any fees set forth in Article III of this Agreement.

ARTICLE V

<u>CLIENT</u>

Client agrees as follows:

1. To pay to Service Company the fees prescribed in Article II. If Client fails to pay Service Company the fees prescribed in Article II in accordance with the time frames set forth therein, Service Company will notify Client and if Client does not cure such failure within ten (10) business days of such notice, Service Company may terminate this Agreement immediately. In the event of such immediate Agreement termination, the termination option as set forth in Article VI, Paragraph 1(B), shall apply.

2. To pay to Service Company as provided in Exhibit A for all services rendered by Service Company with respect to claims and/or losses previously handled or attempted to be handled by any person, firm or corporation or Client before being assigned to Service Company.

3. To pay Allocated Loss Adjustment Expenses, as defined in Article IV, in addition to any fees paid to Service Company as prescribed in Article II.

4. To indemnify, defend and hold Service Company and Service Company's directors, officers, attorneys, employees, agents and other representatives wholly harmless from and against any and all damage, loss, costs and expenses whatsoever (including, without limitation, attorneys' fees and litigation expenses) incurred by Service Company or by any of Service Company's directors, officers, attorneys, employees, agents or other representatives, by reason of any act or omission of Service Company or of any of Service Company's directors, officers, attorneys, employees, agents or other representatives taken or omitted to be taken at the express and specific direction of Client or any of Client's directors, officers, attorneys, employees, agents or other representatives or by reason of the negligent or other tortious conduct of Client or any of Client's directors, officers, attorneys, employees, agents or other representatives. In the event Service Company or any of its directors, officers, attorneys, employees, agents or other representatives, is named as a defendant in, or is otherwise obligated to defend, any action asserting any Claim indemnified hereunder, Client will assume, at Client's expense, the defense of such actions on behalf of Service Company and its directors, officers, attorneys, employees, agents or other representatives, as the case may be. Client has sole discretion to select the attorneys who will defend any such action, provided, however, that Client shall exercise such discretion reasonably. This indemnity shall survive termination of this Agreement.

4

ARTICLE VI

BOTH PARTIES

Service Company and Client agree as follows:

1. To enter into this contract and perform services hereunder as independent contractors, acting in their individual capacities and not as agents, employees, partners, joint ventures or associates of one another. The employees or agents of one party shall not be deemed or constructed to be the employees or agents of the other party for any purpose whatsoever.

2. To consider and treat any and all non-public information of any form obtained by a party or its employees in the performance of this Agreement, including but not limited to any customer or claimant information, company trade secrets, processes, or proprietary data, as strictly confidential and not disclose such information to third parties or to use such information for any purpose whatsoever other than as contemplated by this Agreement. Both parties agree to advise its employees, agents and/or subcontractors who may be exposed to confidential information of their obligations to keep such information confidential.

3. To not use the service mark, trademark, tradename or logo of the other party, or any of their affiliates, without the advance written consent of the party owning such mark.

ARTICLE VII

RENEWAL

This Agreement covers the period as stated in Article I. This Agreement shall automatically renew annually unless (a) Client provides Service Company at least sixty (60) days written notice prior to the anniversary date that Client does not wish to renew or (b) Service Company provides Client with at least one hundred twenty (120) days written notice prior to the anniversary date that Service Company does not wish to renew.

Any price changes by Service Company shall be presented to Client in writing at least ninety (90) days prior to the anniversary date.

TERMINATION

Either party may terminate this Agreement in the event that:
(a) The other party is in default of any warranty, representation or material performance obligation hereunder and such default continues uncured for thirty (30) days subsequent to written notice thereof; or
(b) The other party files for protection under the bankruptcy laws or makes an assignment for the benefit of creditors or if a trustee or similar officer is appointed for the other party or its assets.

COOPERATION UPON NON-RENEWAL OR TERMINATION

Upon termination or nonrenewal of this Agreement:
A.   Client in its sole discretion may require Service Company to conclude the handling of any Claims assigned to Service Company during the term of this Agreement, pursuant to the terms and conditions of this Agreement.

B. Service Company shall return all open and closed Claim files to Client. Such return of Claim files

5

shall not result in any expense or reduction in per claimant fees for all flat rate claims referred to Service Company prior to the effective date of termination, or time and expense fees incurred on time and expense Claims prior to the effective date of termination. Prior to the return of such files, the parties shall agree upon a mutually acceptable reimbursement amount to be paid to Service Company for returning such files and providing any required computerized Claim data tapes. Such amount,, with documentation showing such reasonable costs, will be billed to Client by Service Company and paid by Client to Service Company within thirty (30) days of receiving the invoice.

## ARTICLE VIII

GOVERNING LAW

This Agreement shall be governed by, and its provisions construed in accordance with, the laws of the State of California.

## ARTICLE IX

INVALID PROVISIONS

In the event any provision of this Agreement does not comply with any law, ordinance or regulation, now existing or hereinafter enacted, such provision shall to the extent possible be interpreted in such a manner so as to comply with such law, ordinance or regulation and if such interpretation is not possible, it shall be deemed amended to satisfy the minimum requirements thereof. The validity of the other provisions of this Agreement shall not be deemed to be adversely affected but shall remain in full force and effect.

## ARTICLE X

EXCLUSIVITY

This is an exclusive Agreement between Service Company and Client to the extent Service Company shall be assigned and provide services under this Agreement for any Claim assigned to Service Company by Client during the term of this Agreement. Notwithstanding this exclusivity provision, Client has the right to (a) assume the control and handling of any claim at any time; or (b) evaluate any product or service competing with those provided by Service Company under this Agreement, provided such evaluation lasts no more than ninety (90) days. If Client in good faith becomes dissatisfied with Service Company's performance hereunder, and Service Company fails to cure the issues giving rise to such dissatisfaction during a reasonable cure period, then Client has the right to convert this Agreement into a non-exclusive agreement.

## ARTICLE XI

AMENDMENT AND WAIVER

No amendment or waiver of any provision of this Agreement, and no consent to any departure herefrom, shall be effective or binding unless and until set forth in a writing signed by each party, and then any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which it is given. No notice or any other communication given by one party hereto to the other party shall be construed to constitute approval or ratification by the other party of any matter contained or referred to in such notice, unless the same is consented to by the other party in writing.

ARTICLE XII

ENTIRE AGREEMENT

  This Agreement, together with the exhibits attached hereto, constitutes the entire agreement between the parties relating to the subject matter hereof and there exists no other written or oral understandings, agreements or assurances with respect to such matters except as are set forth herein. Unless expressly stated, this Agreement confers no rights on any person or business entity that is not a party hereto and no third party beneficiary status is intended.

ARTICLE XIII

NOTICES

  All notices, requests and other communications concerning this Agreement from either party to the other shall be in writing and delivered either personally or by certified mail, return receipt requested. Any such notice, request or other communication shall be deemed to have been given on the date of personal delivery or, if mailed, on the date of mailing. All communications shall be addressed as follows:

If to Service Company: ..

CRAWFORD & COMPANY
5620 Glenridge Drive, N.E.
Atlanta, Georgia 30342
Attn: Howard Rogers

If to Client:

SAFECO INSURANCE COMPANIES
P.O. Box 34655
Seattle, WA 98124-1655
Attn: William Goodman
Position/Dept.: William Goodman Unit manager, Claim

ARTICLE XIV

ASSIGNMENT

  Neither party may assign its rights or obligations under this Agreement without the prior written consent of the other party; provided, however, that Service Company may subcontract part or all of the services required hereunder to any of its affiliates and subsidiaries without Client's written consent.

ARTICLE XV

BINDING EFFECT

  This Agreement shall be binding upon and inure to the benefit of each party hereto and their respective permitted successors and permitted assigns.

ARTICLE XVI

DISPUTE RESOLUTION

7

Should any dispute arise or relate to this Agreement that the parties cannot settle amongst themselves, the parties agree to submit to non-binding mediation before a professional mediator in a venue mutually agreed upon by the parties.

The costs of the mediator shall be shared equally between the parties. All other costs and expenses shall be borne by the respective party incurring such costs and expenses.

ARTICLE XVII

WAIVER

The failure of either party to insist upon strict performance of any provision of this Agreement, or to exercise, in full or in part, any right provided for herein, shall not be deemed to be a waiver for the future of such provision or right, and no waiver of any provision or right shall affect the right of the waiving party to enforce any other provision or right herein.

ARTICLE XVIII

COUNTERPARTS

This Agreement may be executed in one or more counterparts, each of which shall be considered an original, and all of which shall constitute one and the same instrument.

IN WITNESS WHEREOF, the parties by their authorized agents have caused this Agreement to be executed as of the date first written above.

CRAWFORD & COMPANY                    SAFECO SELECT INSURANCE SERVICES, INC.

BY: _____        BY: _____

TITLE: Executive Vice President      TITLE: Unit Manager

DATE: January 31, 2002               DATE: 2-15-02

                                     BY: _____
                                     Home Office Claims

                                     TITLE: Director Claims

                                     DATE: 2-21-02

EXHIBIT A
PRICING AGREEMENT

Administration Fee:            $165
This fee is applicable to every claim/file established that requires handling on the part of the Service Company.

Field Service Fee:            $510
This fee is only applicable to those losses that require outside field investigation/handling by a Service Company representative.   The administrative center will assign outside field work to Service Company locations.  This fee applies to those files that require outside field work.

# EXHIBIT B
## CLAIM SERVICE STANDARDS

Contact
Initial telephone, insured and borrower                24 hours of claim assignment
Follow up contact                                       72 hours of claim assignment
Written follow up                                       72 hours and 7 days

Assignment of field work/damage evaluation             24 hours of contact

Inspection                                              Appointment made at contact with person
                                                        allowing access.

Coverage determination                                  Compliance with state claim regulations

Estimate completion                                     3 days of inspection, or file documented as to
                                                        why an estimate can not be completed.

Initial report in file                                  7 days
Follow up reports                                       every 30 days

Reserves                                                2 days within damage evaluation.   ***Property
                                                        reserves of <$5000 can not be set in less than 60
                                                        days.

Payment                                                 2 days within settlement.

Written communications                                  Compliance with state claim regulations

10

EXHIBIT C
## CLAIM FILE INVESTIGATION AND DOCUMENTATION STANDARDS

**Insured:**
- Amount of loan
- Status of loan
- Occupancy information: who occupies, phone number, tenant or borrower.
- How to get access: borrower, real-estate broker, property management company
- Confirm address
- When did a representative of the insured last inspect the property, whether an employee or services company? Do they have any condition reports?

**Borrower:**
- Occupancy
- Access and inspection arrangements
- Typical investigative questions: when did loss occur, what was the cause, witnesses, extent of damages.

**Cause of loss:** The cause of loss must be documented to the point where the efficient proximate cause can be confirmed and subrogation possibility determined.
- <u>Fire</u> claims must have a copy of a fire department report. A cause and origin expert should be hired when the property is owner occupied and the house is livable, the scene has not been disturbed, the fire department considers the cause suspicious, and authorization has been obtained from a SAFECO adjuster or manager.
- <u>Use of engineers</u> to help determine the cause of water damages, wind damages, and other structural damages should be at the discretion of a SAFECO adjuster or manager.
- <u>Statements</u> are not usually necessary, especially from an insured; they usually do not have information about what caused a loss.

**Building Damages:** All claims must document RCV and ACV building damages, whether in the form of an estimate completed by an adjuster, a contractor's estimate, or a repair bill or invoice. Damages greater than $2500 should be inspected by an adjuster, claims less than this amount do not require an adjuster to inspect the damage if damages can be documented through an estimate obtained by the insured or borrower, or an invoice. The adjuster should obtain additional damage documentation:
- Photos of the damages, photos of the property in general are not needed.
- Diagrams are not usually necessary, expect for larger claims, where damages exceed $50,000.

**Personal Property Damages:** Personal property damages should be itemized. Proof of ownership, description of property, age, condition, and the borrower must document value; the adjuster determines ACV.

**Settlement:** All files must document details of the settlement, including how it was determined.

**SIU Referral:** Any claim with suspicious facts must be referred according to the SIU Referral Standards.

**Subrogation Referral:** As soon as any possibility of recovery is recognized, that claim must be referred according to the Subrogation Referral Standards.

**Other Referrals:** Service Company shall promptly notify in writing a SAFECO adjuster or manager of any allegations of bad faith or extracontractual damages.

EXHIBIT D
AUTHORITY LIMIT

Authority Limits are as follows:

Reserve: $25,000 – Service Company has authority to establish claim reserves within Safeco systems up to $25,000.00. All reserves over this amount must be reported to Safeco either verbally or in writing via email.

Management approved payments: $25,000 – A Service Company authorized representative has authority to issue payments up to $25,000.00 through the Safeco Claims System.

CRAWFORD & COMPANY
STANDARD BILLING POLICIES (U.S.)

The following are Crawford & Company's standard billing policies ("Policies") for professional and administrative services.    These Policies supersede all existing policies for the billing of these services.

I.    **CLIENT SPECIFIC BILLING ARRANGEMENTS FOR PROFESSIONAL AND ADMINISTRATIVE CHARGES**

Most of Crawford's billing rates and procedures are specific to the programs and matters being handled for each client.  Typically, a client's specific billing arrangements for professional and administrative charges are negotiated and agreed to prior to the handling of any assignment and should be stated in writing.  An arrangement may include flat rates, scheduled rates, fixed time increments for specific limited assignment tasks from the Limited Assignment Menu of Services (see attachment), fixed fees for certain administrative tasks and agreed upon hourly rates which may vary from the scheduled hourly rate.

In all cases where Crawford has agreed to client specific billing arrangements for professional and administrative services that differ from the general billing Policies described below in section II, III and IV, the client specific billing arrangements always take precedence.  Client specific billing arrangements for professional and administrative charges must be stated in writing.  This can be in the client specific instructions or parameters, in the pricing section of any written contract, if applicable, or other writing such as a billing arrangement confirmation.  The client specific instructions or parameters, once agreed upon, should be sent to the client at inception of each program or matter.

If Crawford's published Fee Schedules apply to a Property or Vehicle Services assignment, these schedules govern the fees that are billed.

II.    **ASSIGNMENTS  (A) WITH NO PRE-ESTABLISHED BILLING ARRANGEMENTS FOR PROFESSIONAL AND ADMINISTRATIVE CHARGES OR  (B) WHERE BILLING IS UNDER AN AGREEMENT WHICH SPECIFIES TIME & EXPENSE BILLING METHOD**

Except for standard fees for the administrative tasks listed below, professional time on assignments (a) with no pre-established client specific billing arrangements; or (b) under an agreement where services are provided on the time and expense method of billing are to be billed per task based on the actual time spent by an employee (i) providing professional services, and (ii) traveling or waiting in connection with providing those services.   Time is billed at the applicable hourly rate at the time such services are performed.  Time is recorded for each task in minimum increments of one-tenth of an hour per task, rounded up to the next one-tenth of an hour when the prior one-tenth of an hour is exceeded.

Administrative tasks not listed below also are billed based on the actual time spent by a professional or administrative staff person to perform the task.  This administrative time is billed at the applicable hourly rate that applies at the time such services are performed. Time is recorded for each task in minimum increments of one-tenth of an hour per task, rounded up to the next one-tenth of an hour when the prior one-tenth of an hour is exceeded.

## Standard Administrative Fees

The administrative tasks listed below are billed at a standard fee. The fixed fee for each task is determined by multiplying the fixed time billing unit for each task by the hourly rate that applies at the time services are performed. Tasks indicated by an asterisk (*) are billed at 90% of the applicable hourly rate. The fixed time billing unit is not intended to represent only time spent on the task.

| Standard Administrative Tasks | Code | Billing Unit | Comments |
|---|---|---|---|
| *Data change/correction | CG | 0.2 | Per page corrected |
| *Clerical | CL | 0.2 | (1) Per page typed |
| *Data entry | DE | 0.2 | Per page entered |
| *Issue check | IC, II, IM | 0.2 | Per check issued |
| *Transcription | TR | 0.2 | (1) Per page transcribed |
| Draft/check request | DR | 0.2 | Per check requested |
| Sisdat Input or Change | SI | 0.2 | Per input or change |
| Prepare Sisdat Document | PRSD | 0.2 | Per document |
| Prepare check/draft | PRCK | 0.2 | Per check |
| Prepare CIB filing | PRIX | 0.3 | Per filing |
| Prepare worksheet/form | PRWF | 0.2 | Per worksheet/form |
| Prepare reserve worksheet | PRRW | 0.2 | Per worksheet |

The above standard administrative fees do not include professional time devoted to the review and evaluation of a file for purposes of completing these administrative tasks. Professional time is charged in addition to these standard administrative fees.

(1) The final typed /transcribed page must have at least six (6) lines of type, excluding headers and footers, in order to be charged 0.2 of an hour/standard charge. Single page documents are charged 0.2 of an hour/standard charge.

Standard charges for administrative tasks are subject to change at any time by senior management.


## Standard Administrative Fee for Indirect Administrative Costs:

A standard administrative fee (Code XX) has a fixed time billing unit of 1.0 and is charged on each file, provided however, a standard administrative charge is not applied to medical only workers compensation files, scheduled damage appraisals, or if all services are performed from the Limited Assignment Menu of Services. The standard administrative charge is billed by multiplying 1.0 by the applicable hourly rate when the file is created. The standard administrative charge covers indirect administrative costs associated with non-billable personnel.

Crawford's Investigative Services Unit (CIS) charges a standard administrative fee equivalent to 7.5% of fee billings.

## III. SPECIFIC POLICIES PERTAINING TO ALL BILLINGS

### Multiple Files

When a professional employee is traveling, or waiting in connection with a file, his or her work on another unrelated file may be billed in addition to the travel or waiting time on the first file. Where travel or waiting time is incurred for more than one file, the actual time shall be prorated among such files. Mileage charges incurred for more than one file shall be prorated among such files, not to exceed total miles driven.

Any single task charge pertaining to multiple related files, including administrative tasks for which a standard fixed fee is charged, should be prorated across all related files. After such proration, any time which is less than, or between, a tenth of an hour is rounded up to the next tenth of an hour for each of the related files.

### Notification to Client

For all assignments, an acknowledgement communication to the client, either by mail, fax or email, will be sent within three (3) business days of receipt of the assignment and shall include (i) an acknowledgement of the receipt of the assignment, and (ii) a reference to Crawford's Standard Billing Policies (U.S.), located on Crawford's web site at www.crawfordandcompany.com, to ensure a clear understanding between Crawford and the client relating to Crawford's billing policies. Crawford should send a hard copy of the Standard Billing Policies (U.S.) to a client if the client does not have internet access or requests a copy.

If the client has already been provided with the Billing Policies and requests that acknowledgement letters no longer be sent, this should be confirmed by letter to the client. At that point, an acknowledgement letter need not be sent.

## IV. EXPENSES

Airfare, lodging, meals, taxi and rental vehicles are billed at cost.

*[handwritten: NOT APPL, PRICES ALL INCLUSIVE]*

Mileage is charged as follows:

| | |
|---|---|
| Continental U.S. | $0.40 cents per mile |
| Alaska | $0.43 cents per mile |
| Hawaii | $0.43 cents per mile |

*[handwritten: ANY CONTRACT US BILLING POLICY NOT MILEAGE, NOT POSTAGE.]*

Parking and tolls are billed at cost.

Photocopies and faxes are billed at $0.30 per page.

Photograph(s) are charged at $2.00 each.

Phone Charges for all domestic long distance calls and local toll calls are $2.50 per call. Local cellular calls are $1.00 per call. International calls are charged at cost.

*[handwritten: BILLING POLICY BUT SUPERCEDED BY PRICING]*

A standard mailing charge of $5.00 per file is charged for routine mailings, including electronic communications. Special mailings or deliveries (overnight mail, certified mail, courier service, international mail, etc.) are charged at cost.

Miscellaneous - Expense incurred for items such as police reports, medical reports, cassettes, and other allocated loss adjustment expense, etc., are billed at cost.

Sales Tax is billed as applicable.

Depending on the nature of the assignment, charges for certain vendor expenses are subject to mark-up.

Expense item rates are subject to change at any time by senior management.